THE BRIDGEPORT HARDWARE MANUFACTURING CORPORATION *vs.* JOSEPH BOUNIOL.

Third Judicial District, New Haven, January Term, 1915.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

In an action to recover under a contract for window-locks patented by the defendant and manufactured for him by the plaintiff, the complaint did not allege the number of locks which the contract called for, nor did it set forth certain slight modifications in the style, finish and price of the locks, which were subsequently agreed upon, as appeared from the evidence. *Held* that these variances were too trifling and insignificant to be treated as material.

Under our practice only those variances are available which disclose a disagreement between allegation and proof in some matter essential to the charge or claim.

Bridgeport Hardware Mfg. Corporation *v.* Bouniol.

In an action for work done and materials furnished at an agreed price, the plaintiff may recover their fair or reasonable value if the evidence fails to support the price alleged.

An overcharge for the manufacture of goods has nothing to do with the question of whether they were made in accordance with the contract or not.

An overcharge with respect to one item of an account may be balanced by an undercharge with respect to another.

Under a continuing contract for the manufacture of goods for cash, the manufacturer is not obliged to continue to deliver and thereby extend credit to the purchaser when the latter neglects or refuses to pay for the goods already delivered.

The plaintiff agreed to deliver the tools and patterns used in the manufacture of these locks to the defendant on demand. *Held* that this did not oblige the plaintiff to carry the tools and patterns to the defendant, but simply to permit him to remove them if he so desired.

Under §§ 42, 43 and 47 of the Sales Act (Public Acts of 1907, chapter 212) the buyer of goods unquestionably has the right to inspect them before payment; but unless otherwise agreed, this must be done at the place of delivery, which, in the case of manufactured goods, is at the factory unless some other place is specified or fixed by trade usage.

Letters of third parties ordering goods of the defendant were offered in evidence to show that he had a market for them. *Held* that without proof of authentication the letters were mere hearsay and were properly excluded.

The Superior Court cannot render a judgment in excess of the *ad damnum* clause; but prior to final judgment the court may permit the *ad damnum* to be amended to meet the situation.

Argued January 21st—decided March 26th, 1915.

ACTION to recover damages for an alleged breach of a contract to accept and pay for patented window-locks manufactured by the plaintiff for the defendant patentee pursuant to his order, brought to the Court of Common Pleas in Fairfield County and transferred to and tried by the Superior Court in that county (*Tuttle, J.*) after the defendant had filed a counterclaim for $8,000 damages; facts found and judgment rendered for the plaintiff for $1,134, and appeal by the defendant. *Error and new trial ordered nisi.*

In this court the appellant sought to secure material

changes in the finding of facts under an application to "rectify the appeal" pursuant to General Statutes, § 801, but without presenting a transcript of the evidence, or any of it, as given upon the trial. *Application denied.*

*Robert E. DeForest,* for the appellant (defendant).

*Carl Foster,* for the appellee (plaintiff).

WHEELER, J. The defendant claims variances between the cause or causes of action alleged in the complaint and the facts found.

The complaint was in a single count, and sought a recovery for goods manufactured by the plaintiff for defendant under two separate contracts for two separate classes of goods.

In August, 1908, the plaintiff entered into a contract with the defendant to manufacture for him twelve thousand, five hundred locks of a certain pattern. Five thousand of these were made under this contract and paid for. It having been found that changes were required in these locks to make them marketable, the parties, in January, 1909, abrogated the contract of August, 1908, and entered into a new contract, by which the plaintiff agreed to manufacture the new style of locks numbers three and four, and the defendant agreed to pay for the same stated prices, and to pay the actual cost of changing parts of the locks in process of manufacture by plaintiff so as to conform to the new pattern.

In February, 1909, the parties entered into a supplementary agreement, providing for the delivery on demand to defendant of the tools and patterns used in the manufacture of these locks, to alter those in the possession of plaintiff to conform to the changed patterns, and for certain other additions and modifications. For

fixing these locks with the new brass screw the plaintiff was to receive an additional price.

On May 7th, 1909, defendant had paid the plaintiff in full under this contract. On May 13th, 1909, the parties made another contract to manufacture locks numbers one and two. Locks numbers one and two were made under the contract of May 13th, except that some were put up with brass screws, for which plaintiff claimed the right to charge seven cents instead of the contract price, six and one half cents.

The plaintiff continued to manufacture under both contracts. In some of its bills for locks numbers three and four, the plaintiff charged half a cent a lock more than the price agreed upon in the January contract. The overcharge amounted to $4.71.

We think the defendant is correct in his contention that the contract of January as modified by its letter of February constituted one contract under which locks numbers three and four were manufactured. While the number of these locks was not specified in these letters, we think the defendant is correct in his claim that the finding, together with the admissions of the pleadings, make it fairly manifest that the number of locks to be made under this contract was that specified under the contract of 1908, viz., twelve thousand, five hundred, less those already made.

The failure to allege the number to be made as contracted for is one of the claimed material variances. The modifications in finish, style and price, as made by the February letter, are claimed to be other material variances. The contract as alleged and as made was to manufacture certain locks of a designated pattern. The subject of the contract was never varied in any material manner. The modification in the locks was simply the substitution of a brass screw in place of a lock shaft, an unimportant change.

The change in price was a specific addition to the prices named in January to cover the substituted brass screw. In no sense could this change and addition be held to have changed the nature or terms of the contract in any material degree, otherwise every contract of manufacture would be abrogated and a new one made with every modification in the subject of the manufacture or in the price.

The failure to allege the number of locks to be manufactured did not constitute a material variance. The contract alleged covered any number of locks, and hence included the number actually contracted for.

Immaterial variances under our practice are disregarded, and those only which disclose a disagreement between the allegations and the proof in some matter essential to the charge or claim are available. *Maguire* v. *Kiesel*, 86 Conn. 453, 457, 85 Atl. 689.

These considerations apply with equal force to the claim of variance in the allegations and proof of the contract of May 13th. Were these variances to be regarded as material, the judgment could be supported under the finding that the fair value of the material and labor furnished was the sum for which judgment was rendered. Practice Book (1908) p. 240, § 131.

Another assignment of error is that the court could not render judgment in favor of the plaintiff, since it had not performed its part of the contract relating to locks numbers three and four. The delict in performance is confined to three particulars.

1. In the presentation of its bill for locks numbered three and four, the defendant charged for a part of the locks half a cent a lock more than the contract price, amounting to $4.71, and this overcharge is urged as one of the breaches of the contract.

The prices charged had nothing to do with the question of whether the goods were made in accordance with

the contract. The defendant might have tendered payment of the amount due; he could not prevent collection of what was due merely because the price charged varied from the price contracted for. Differences of that sort will be adjusted in the recovery; they in no way involve the issue of performance.

It appears from the finding that the defendant never pointed out this overcharge, but contented himself with the assertion that there were overcharges. The finding seems clear that it was not until November 2d, 1909, the plaintiff discovered the specific overcharge, and it then wrote the defendant that certain of the locks made had been put up with screws without charge, and that the charge for this item would overbalance the overcharge.

The trial court found in accordance with this claim, and found that the balance stated in Schedule A of the account was due. This finding would dispose of the matter adversely to the defendant, even though his claim in this regard had had relation to the issue of performance.

2. In refusing to deliver goods made until payment had been made upon the overdue account. So far as the record shows, the terms of payment were cash. The plaintiff had the right to insist upon payment being made before delivery. It also had the right to insist upon the payment of its past due account before it delivered other goods. A manufacturer, under a continuing contract for the manufacture of goods for cash, is not obliged to continue delivery, and thereby extend credit, when the purchaser neglects or refuses to pay for goods already delivered.

3. In refusing defendant's demand for the delivery to him of the tools, patterns, etc., belonging to him and in the hands of plaintiff. So far as appears there was a demand, but no refusal; the plaintiff was under no obli-

gation to carry these articles to the defendant: it was the defendant's duty to carry them from the plaintiff's premises. Until he had endeavored to do this and the plaintiff had refused to permit it, there is no basis for the claim that the plaintiff refused this demand.

Next the defendant urges that the court erred in ruling that he could not inspect the goods before payment. In a contract for the manufacture and sale of goods in which, as in these contracts, no term of credit is stipulated for, the delivery and payment are concurrent conditions, and the place of delivery is the place of manufacture, where, as in this case, the place of delivery is not specified and there appears to have been no usage of trade to the contrary. Sales Act (Public Acts of 1907, Chap. 212, p. 775), §§ 42 and 43. Unquestionably the buyer has the right to inspect the goods before payment. Sales Act, § 47. The record does not show that the trial court ruled otherwise.

Again the defendant insists that the trial court erred in ruling that he could not recover damages upon his cross-complaint. What the court did rule was that upon the facts in evidence the defendant was not entitled to recover upon his cross-complaint. The recitals of the finding fully support the ruling.

A single ruling upon the exclusion of evidence is assigned as error. The defendant offered certain letters claimed to have been received by him from his customers at a time when the plaintiff retained possession of the goods it had manufactured under the contracts, and which it refused to deliver until a prior account had been paid. These letters were claimed to contain orders for goods which plaintiff had contracted to make for him. Their offer was for the purpose of showing that the defendant had a market for the goods, and was damaged, as claimed in his counterclaim, by the refusal of the plaintiff to deliver. The offer was objected to by the

plaintiff, and the objection sustained by the court, for the reason that no proof was offered, other than by the letters, that they were written and sent by the persons and corporations whose names were signed to the letters. The ruling was correct; without proof of authentication the letters were mere hearsay.

It remains to consider the reason of appeal that the judgment is void because in excess of the *ad damnum*. Originally the cause was brought to the Court of Common Pleas, claiming $1,500 damages. Subsequently a substituted complaint was filed, showing the amount actually due to be $903.44 and claiming $1,000 damages. Thereafter the defendant filed a counterclaim for $8,000 damages, and moved for a transfer of the case to the Superior Court. The transfer was duly made, and that court rendered judgment for $1,134.32 damages. This judgment obviously included a sum for interest, which brought it above the *ad damnum* of $1,000. The substituted complaint fixed the *ad damnum* of the cause in the Court of Common Pleas, and upon its transfer to the Superior Court the *ad danmum* remained the same.

In the Court of Common Pleas the judgment rendered might have exceeded the *ad damnum* by the interest accruing after the commencement of the suit. General Statutes, § 559. There is no similar statutory provision applicable to judgments rendered in the Superior Court. These are limited to the *ad damnum*, which for good reason shown may be increased by amendment. The judgment rendered in this case followed the facts; through inadvertence the *ad damnum* was not, by amendment, raised. That may be done on order of the Superior Court at any time before final judgment.

There is error and the judgment is set aside; and a

new trial ordered unless an amendment raising the *ad damnum* sufficiently to cover the judgment to be rendered is asked for and allowed, in which event. the Superior Court is directed to enter judgment in the sum of $1,134.32 damages with interest from July 22d, 1914, and with costs.

In this opinion the other judges concurred.