JOHN ROBBEN ET AL. *v.* HARTFORD
ELECTRIC LIGHT CO.
(2281)

DANNEHY, C.P.J., TESTO and BORDEN, Js.

Argued November 4—decision released December 27, 1983

*Anthony M. Fitzgerald,* with whom, on the brief was *Maureen D. Cox,* for the appellant-cross appellee (defendant).

*Lawrence M. Lapine,* with whom, on the brief, was *Robert S. Bello,* for the appellees-cross appellants (plaintiffs).

TESTO, J. The plaintiffs brought this action to recover damages for personal injuries alleged to have been caused when they came into contact with electricity from a fallen electrical wire in their driveway. The jury returned a verdict in favor of the plaintiffs and, from the judgment on the verdict, the defendant has appealed to this court.[1]

The jury could reasonably have found the following facts: Prior to the incident giving rise to this cause of action, the defendant retained tree contractors and linemen[2] to inspect lines for trees that posed a threat of danger to them. The defendant had a manual defining "danger trees"[3] and requiring their removal. The National Electrical Safety Code also required the trimming of trees.

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

[2] The defendant maintains that those who trimmed the trees were skilled and educated in the nature of trees, but were not required to be tree surgeons.

[3] The defendant, in its manual given to the tree trimming coordinator, required the removal of certain trees: "Trees which should be removed

The defendant claimed to have inspected the power lines running over the plaintiffs' property approximately one year prior to the events at issue. The defendant did not notice that a red maple tree growing on adjacent property had cracked as the result of one of the leaders breaking. This crack, however, may not have been visible from the plaintiffs' property. Although the tree was located neither on the plaintiffs' property nor on the defendant's easement,[4] there was testimony that the defendant had, in the past, requested and received permission of adjacent landowners to remove danger trees.

On August 28, 1971, the red maple tree fell down, taking the defendant's electrical lines with it. When the lines landed on the ground, they struck an electrical wire connected to the plaintiffs' house creating "an energized ground gradient."[5] The plaintiffs were awakened by the noise outside. When the plaintiff John Robben attempted to turn on the lights, he was thrown against the wall by an electrical shock. After this occurrence, the plaintiffs proceeded to leave their house. Each of the plaintiffs experienced electric shocks as a result of the energized field.[6]

---

regardless of power line function; (1) Danger trees. (a) Dead trees; (b) Diseased trees (advanced decay and/or insect damage present); (c) Structurally weak trees ('poplar', 'willow', 'silver maple', 'red maple', 'chinese elm', etc.); [and] (d) Trees with poor anchorage of roots . . . ." HELCO's Reference Manual For: Tree Work and Brush Control.

[4] The tree in question was located on property adjoining the defendant's right of way, but was fifty-one and one-half feet from the portion of the line over which it ultimately fell and which connected to the plaintiffs' house.

[5] The defendant's electrical power is generally distributed to its customers by means of overhead conductors or wires. The red maple tree knocked a fifteen thousand volt conductor from its poles. When an electrical conductor falls to the ground, the current that escapes from the wires can flow in any direction following no predictable course. The downed wire fell on top of a neutral wire connected to the plaintiffs' house setting up this ground current, an extremely unusual occurrence.

[6] Margaret Robben, while holding their dog by the collar, was given a shock as the dog stepped on the grass. She fell onto the grass when the

The jury returned a verdict for the plaintiffs awarding Susan and Ellen Robben $20,000 each, John Robben $10,000 and Margaret Robben $70,000. The defendant moved for judgment notwithstanding the verdict and also filed a motion to set aside the verdict as against the law and excessive. The court denied both motions. The court, however, went on to reduce Margaret Robben's award to $50,000, the amount requested in the ad damnum of the complaint. From the reduction of this award, the plaintiffs cross appealed.

The defendant claims error in the trial court's denial of its motion to set aside the verdict and for judgment notwithstanding the verdict.

The same principles are to be applied in the review of the trial court's action on each motion. *Sauro* v. *Arena Co.,* 171 Conn. 168, 169, 368 A.2d 58 (1976). In reviewing the decision, we consider the evidence in the light most favorable to the party obtaining the verdict. *Kostyal* v. *Cass,* 163 Conn. 92, 94, 302 A.2d 121 (1972). If the jury could reasonably have reached its conclusion, the verdict must stand. *Sauro* v. *Arena Co.,* supra. Moreover, each ruling of the trial court on the postverdict motions is entitled to great weight. *Hearl* v. *Waterbury YMCA,* 187 Conn. 1, 3, 444 A.2d 211 (1982). The trial judge can sense the atmosphere of a trial and has an excellent vantage point for evaluating the factors that may have brought the jury to its verdict. Id.

I

The arguments underlying the defendant's claim that the trial court erred in failing to grant its postverdict motions are essentially twofold. The defendant posits that there was no evidence presented establishing (1)

---

dog ran and a shock of electrical current surged through her body. The two children, Susan and Ellen, were shocked on their way to the neighbor's house. John Robben, while attempting to free his wife from the electrical field, was himself subjected to electrical shocks.

that it failed to exercise the requisite degree of care necessary to safeguard its distribution line, or (2) that it could have or reasonably should have known of the danger that the red maple tree posed to its wires, and that, even if it had known of the danger, it was powerless to remove a tree located on property to which it had no right of access. We disagree and hold that the evidence presented was sufficient to sustain the jury's verdict.

The standard of measurement of a power company's duty of care has been established by the department of public utility control (DPUC). The DPUC mandates that a public utility "use every effort to properly warn and protect the public from danger and exercise all possible care to reduce the hazard to which employees, customers and others may be subjected by reason of its equipment and facilities." Regs., Conn. State Agencies § 16-11-102 (A); *LaFleur* v. *Farmington River Power Co.*, 187 Conn. 339, 341–42 n.3, 445 A.2d 924 (1982); *Citerella* v. *United Illuminating Co.*, 158 Conn. 600, 606, 266 A.2d 382 (1969). This regulation, however, does not require the defendant to take precautions which would be unreasonable under the circumstances or which are impossible as a practical matter for a power company to adopt. *Citerella* v. *United Illuminating Co.*, supra, 607. It merely commands that a power company "exercise in the operation of its electric business the highest degree of care and skill which may be reasonably expected of intelligent and prudent persons engaged in such a business, in view of the instrumentalities provided and the dangers reasonably to be anticipated, as well as the general situation confronting the defendant." Id.

The defendant agrees that it has a duty to inspect the trees in proximity to its wires. It further submits that it had inspected the area at issue one year prior to the incident as a part of its three year inspection

program, but that the crack in the red maple tree could not be seen from the plaintiffs' driveway.[7] To a non-professional tree trimmer, as many of the linemen were, it would look like a "big, beautiful tree." The defendant's superintendent of the distribution system testified that the inspectors used by the defendant may not have recognized "danger trees," and that the parameters of their inspection were limited to a ten to twelve foot radius around the wires. There was contradictory testimony, however, as to whether the tree should have been spotted. The plaintiffs' experts testified that the tree was visible from their driveway and from the defendant's poles, and that the callous flare[8] on the tree would be apparent, to those familiar with "danger trees," as a structural weakness. Other than this testimony, there was no additional evidence that someone standing in the driveway could have discerned from the appearance of the tree that it was in a weakened condition. The credibility of witnesses and the weight to be accorded to their testimony lie within the province of the jury which in the present case favored the plaintiffs. See *Rapuano* v. *Oder,* 181 Conn. 515, 518, 436 A.2d 21 (1980); *Rood* v. *Russo,* 161 Conn. 1, 3, 283 A.2d 220 (1971). We cannot retry the case. *State* v. *Haddad,* 189 Conn. 383, 389, 456 A.2d 316 (1983). It is the jury which decides what is to be believed when the case involves conflicting evidence depending for its solution upon the credibility of witnesses. *Kalleher* v. *Orr,* 183 Conn. 125, 127–28, 438 A.2d 843 (1981); *DeLahunta* v. *Waterbury,* 134 Conn. 630, 635, 59 A.2d 800 (1948); *Horvath* v. *Tontini,* 126 Conn. 462, 465, 11 A.2d 846 (1940).

In the defendant's second point relating to the sufficiency of evidence presented, it asserts that since it had

[7] See footnote 4, supra.

[8] A callous flare is a growth that results from a tree's attempt to heal itself after there has been a break in its wood and is a sign of a structural weakness in the tree.

no easement on the property on which the "danger tree" was located or other right to enter upon that property, its failure to do so could not constitute negligence, and, even if the weakened condition of the tree were known to it, it had no right to remove the tree. Some of the defendant's employees testified that if they knew that a tree on another's property was a hazard to an electric line, they would ask the owner to remove it or otherwise attempt to remedy the condition. They further testified that landowners were most cooperative when a dead or "danger tree" had to be removed. On the evidence presented, the jury could reasonably and logically have found that the defendant did not exercise the highest degree of care and skill which may reasonably be expected of it and failed to take steps necessary to remove a potential danger from its lines. Additionally, where there has been the concurrence of judgments by the judge and the jury after having seen the witnesses and heard the testimony, there is a powerful reason for sustaining the action of the trial court in denying the defendant's postverdict motions. *Kalleher* v. *Orr,* supra; *Sauro* v. *Arena Co.,* supra, 169.

## II

The second claim pursued by the defendant is that the trial court erred in refusing to set aside the verdict as excessive. The defendant argues that because none of the plaintiffs sustained serious physical injury, the size of the verdict is indicative of the jury being affected by each plaintiff witnessing each other in a life threatening situation. The trial court considered the defendant's motion in this regard and determined that it was unpersuasive. We agree.

The verdict in this case must be reviewed in the light of certain principles. First, the amount of an award is a matter peculiarly within the province of the trier of facts. *Kiniry* v. *Danbury Hospital,* 183 Conn. 448, 461,

439 A.2d 408 (1981); *Pisel* v. *Stamford Hospital,* 180 Conn. 314, 342, 430 A.2d 1 (1980). Second, the court should not interfere with the jury's determination except when the verdict is plainly excessive or exorbitant. *Kiniry* v. *Danbury Hospital,* supra; *Pisel* v. *Stamford Hospital,* supra. "The ultimate test which must be applied to the verdict by the trial court is whether the jury's award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption." *Pisel* v. *Stamford Hospital,* supra, 343, quoting *Birgel* v. *Heintz,* 163 Conn. 23, 28, 301 A.2d 249 (1972). Third, the ruling of the trial court on the motion to set aside the verdict as excessive is entitled to great weight and every reasonable presumption should be given in favor of its correctness; its conclusion will not be disturbed unless there is a clear abuse of discretion. *Kiniry* v. *Danbury Hospital,* supra, 462.

The trial court in its memorandum of decision stated that on the merits it did not find the awards to each of the plaintiffs "to shock the conscience of the court." The evidence adduced indicated that to some degree, all of the plaintiffs sustained physical injuries. The exposure and contact with the "energized ground gradient," however, varied with each of the plaintiffs.[9] It appears that the jury considered the degree and length of exposure in making its award since Margaret Robben was awarded the highest damages. Moreover, the court cautioned the jury to disregard testimony relating to emotional distress from witnessing the plight of other family members. If the jurors had disregarded these cautionary instructions, they would have awarded the greater amount to John Robben who witnessed both his daughters' and his wife's contact with the electric-

---

[9] See footnote 6, supra.

ity. The size of the verdict rendered to each plaintiff in no way indicates that the jury misunderstood the law or was swayed by prejudice, passion, bias or sympathy.

We hold that on the evidence presented, the jury could fairly reach the conclusion that the damages awarded constituted fair, just and reasonable compensation for the injuries it reasonably believed the plaintiffs sustained.

## III

In their cross appeal, the plaintiffs challenge the reduction of the jury verdict for the plaintiff Margaret Robben from $70,000 to $50,000, the amount requested in the ad damnum.

When this case was brought in 1973, the Superior Court's jurisdiction to award damages was determined by the amount of the ad damnum. See *Bridgeport Hardware Mfg. Corporation* v. *Bouniol,* 89 Conn. 254, 261, 93 A. 674 (1915). During the trial, the legislature enacted No. 77-497 of the 1977 Public Acts[10] which amended General Statutes § 52-91 to eliminate the requirement that a complaint contain an ad damnum. In addition, Practice Book § 131 was similarly amended.

The plaintiffs claim that since the statute and Practice Book amendments affected matters of procedure, they applied to all pending actions, and the trial court erred as a matter of law in reducing the jury verdict. We agree.

---

[10] Public Acts 1977, No. 77-497 amended § 52-91 of the General Statutes and read in relevant part: "There shall be but one form of civil action and the pleadings therein shall be as follows: The first pleading on the part of the plaintiff shall be known as the complaint and shall contain a statement of the facts constituting the cause of action and a demand for a relief *which shall not allege the amount of money damages sought, if any, but shall be a statement of the remedy sought and an allegation that the matter is within the jurisdiction of the court* . . . ." (Emphasis added.) The emphasized portion is the amendment to § 52-91.

It is well settled law that statutes are presumed to operate prospectively and are not to be construed as having a retrospective effect unless their terms clearly show a legislative intention that they should so operate. *Waterbury National Bank* v. *Waterbury National Bank,* 162 Conn. 129, 134, 291 A.2d 737 (1972); *McAdams* v. *Barbieri,* 143 Conn. 405, 414–15, 123 A.2d 182 (1956); see *Rogers* v. *County Commissioners,* 141 Conn. 426, 429, 106 A.2d 757 (1954). To this rule there is an exception; statutes which are general in their terms and affect matters of procedure are presumed in their intent to apply in all actions, whether pending or not. *Jones Destruction, Inc.* v. *Upjohn,* 161 Conn. 191, 196, 286 A.2d 308 (1971). In the present case, the amendments to the statute and the Practice Book being entirely procedural in nature, apply to pending actions. *Enfield Federal Savings & Loan Assn.* v. *Bissell,* 184 Conn. 569, 575, 440 A.2d 221 (1981); *Computaro* v. *Stuart Hardwood Corporation,* 180 Conn. 545, 556–57, 429 A.2d 796 (1980). The trial court therefore erred in reducing the amount of the award.

There is error in part, the judgment is set aside as to the plaintiff Margaret Robben and the case is remanded with direction to render judgment for the amount of the jury verdict in her favor.

In this opinion the other judges concurred.