## IN RE EDWIN N.*
### (13824)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

Argued May 2—decision released June 12, 1990

* In accordance with the spirit and intent of General Statutes § 46b-142 (b)
and Practice Book § 2026, the names of the parties involved in this appeal
are not disclosed. The records and papers of this case shall be open for
inspection only to persons having a proper interest therein and upon order
of the Supreme Court.

*Brian S. Carlow,* assistant public defender, for the appellant (respondent).

*Cathleen M. Edwards,* state's advocate, for the appellee (state).

PETERS, C. J. In this appeal from an order transferring a juvenile to the adult criminal docket pursuant to General Statutes § 46b-127 (1),[1] the issues are the formal and substantive sufficiency of the trial court's findings in support of the transfer order. The initial petition against the respondent, Edwin N., charged him with two counts of delinquency, because of his alleged commission of murder, in violation of General Statutes § 53a-54a, and his alleged disregard of a court order for his house arrest, in violation of General Statutes § 46b-120. The trial court thereafter granted the state's motion for the respondent's transfer to the regular criminal docket of the Superior Court. In accordance with the provision of § 46b-127 making such a transfer order "a final judgment for purposes of appeal";

---

[1] General Statutes § 46b-127 provides in relevant part that "[t]he court shall transfer to the regular criminal docket of the superior court from the docket for juvenile matters: (1) Any child referred for the commission of a murder under sections 53a-54a to 53a-54d, inclusive, provided any such murder was committed after such child attained the age of fourteen years . . . . No such transfer shall be valid unless, prior thereto, the court has made written findings, after a hearing, that there is probable cause to believe that the child has committed the act for which he is charged. An order by the court under this section transferring a child from the docket for juvenile matters to the regular criminal docket of the superior court shall be a final judgment for purposes of appeal."

see also *In re Bromell G.*, 214 Conn. 454, 460–61, 572 A.2d 352 (1990); the respondent has challenged the validity of the findings against him. We.determined, in accordance with Practice Book § 4023, that the respondent's appeal should be heard in this court, and now uphold the validity of the transfer order.

Under § 46b-127, the validity of a transfer order depends upon a court's making "written findings, after a hearing, that there is probable cause to believe that the child has committed the act for which he is charged." The proceedings in this case arose out of the involvement of the respondent with the death of Andre Lewis in New Haven as a result of a gun shot wound. After an evidentiary hearing in which both the state and the respondent fully participated, the trial court concluded that there was probable cause to believe that the respondent had committed the crime of murder. The court found that the respondent was fifteen years of age on the date when the alleged murder occurred.[2] The court further found that "the victim died of a gun shot wound to the head and that probable cause exists to find that the accused child fired the weapon that inflicted the mortal wound." The court's final finding was that "the alleged incident followed an argument over money between the accused child and the victim." Significantly, even though evidence was presented at the hearing that might have supported the conclusion that the shooting was unpremeditated or even accidental, the court made no explicit finding about the intent with which the respondent fired the gun that inflicted the fatal wound.

The respondent repeatedly moved, over the objection of the state,[3] for further articulation of the trial court's

[2] The transfer provisions of General Statutes § 46b-127 pertain only to a child who has "attained the age of fourteen years."

[3] Given our holding today that the statutory provision requiring written findings as a prerequisite for the transfer of a juvenile to the adult crimi-

written findings of fact and conclusions of law.[4] The trial court denied his motion for articulation. When the request for articulation was renewed in this court, we granted the respondent's motion for review but denied the relief he requested.

The respondent has raised two related challenges to the validity of the order transferring him to the regular criminal docket. He maintains that (1) the trial court's written findings were legally insufficient to satisfy the requirements of § 46b-127 because they contained no express finding as to his intent to commit the crime of murder, and (2) there was an insufficient evidentiary basis for the trial court's implied conclusion that the respondent specifically intended to kill the victim. Although we agree that the trial court should have made an express finding on the contested issue of intent, we are persuaded that the court's failure to do so was harmless in light of the sufficiency of the evidence on intent presented at the hearing.

It is useful at the outset to note what is not at issue. The respondent concedes that the trial court's written findings sufficiently address the respondent's age and his causal implication in the victim's death. The questions that he raises are confined to the issue of intent.

The absence of an express judicial finding that the respondent had the requisite intent to cause the death of the victim when he shot him was an unwarranted

nal docket is a substantive rather than a merely formal requirement, it would appear unlikely that the state, in the future, should find it necessary to object to a request for an articulation, since an articulation, as the instant case demonstrates, can facilitate an appellate court's review of the propriety of the transfer order.

[4] The respondent also moved for a stay of the transfer pending the outcome of his appeal. Although the trial court denied that motion as well, this court, sua sponte, stayed the transfer order in accordance with our recent decision in *In re Bromell G.,* 214 Conn. 454, 462–63, 572 A.2d 352 (1990).

departure from the mandate of § 46b-127 for "written findings . . . that there is probable cause to believe that the child has committed the act for which he is charged." The respondent was charged with the commission of a murder in violation of § 53a-54a. The court should have made a finding concerning his intent, because specific intent to cause the death of another is an element of the crime of murder under § 53a-54a. *State* v. *Chace,* 199 Conn. 102, 104, 505 A.2d 712 (1986); *State* v. *Rodriguez,* 180 Conn. 382, 399, 429 A.2d 919 (1980).

This court has repeatedly affirmed the significance of a transfer order in juvenile proceedings. In *In re Ralph M.,* 211 Conn. 289, 302, 559 A.2d 179 (1989), we recognized that the decision whether to issue a transfer order, because it implicates the relinquishment of juvenile jurisdiction, is a "critically important" stage in the adjudicatory process. See *Kent* v. *United States,* 383 U.S. 541, 560–61, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966). We held that, in conducting the transfer hearing, the court could "hear any evidence that it determines to be reliable, and that is material and relevant to the issue of probable cause." *In re Ralph M.,* supra, 307. In *State* v. *Torres,* 206 Conn. 346, 360, 538 A.2d 185 (1988), we emphasized that, in the transfer process, written findings play an important role in the implementation of the legislative policy of "shielding children from criminal liability except in clearly circumscribed situations." We there held that, without the requisite judicial findings, a juvenile charged with the commission of murder could not be retained on the regular criminal docket for the prosecution of a charge of manslaughter once it was determined that there was no probable cause to believe that he had committed murder. Id., 358–60.

In light of these holdings, we reject the state's contention that § 46b-127 would validate a transfer order

accompanied by an entirely conclusory judicial pronouncement that there is probable cause to believe that the respondent had committed the act of murder. The point of the evidentiary hearing that the statute mandates is to enable the trial court to make the evidentiary findings that warrant depriving the juvenile of the protections to which he would otherwise be entitled. *In re Ralph M.*, supra, 302. Further, the safeguard of an immediate right to appellate review of a transfer order would be undermined if the appellate tribunal were compelled to speculate about the factual basis upon which the trial court relied in its determination that a transfer was appropriate. Compare *State* v. *Chiarizio*, 8 Conn. App. 673, 683, 514 A.2d 370 (1986).

Although § 46b-127 requires the trial court to make "written findings" without specifying that the "findings" must be findings of fact, the well-nigh universal linkage of "findings" with "facts" justifies the interpolation of a factual element into the statutory requirement. Such a usage prevails throughout the General Statutes wherever statutes empower judges, administrative hearing officers, or arbitrators to adjudicate contested claims. See, e.g., General Statutes § 3-62f (return of escheated property); General Statutes § 4b-97 (public works arbitration); General Statutes §§ 7-473 (c) and 7-473b (d) (municipal employee labor disputes); General Statutes § 17-43a (d) (termination of parental rights); General Statutes § 22-234 (license suspension); General Statutes §§ 36-484 (f), 36-489 (c) (3), 36-490 (c) and 36-511 (regulation of investment advisors); General Statutes § 38-63 (unfair practices in insurance industry); General Statutes § 38-517 (b) (privacy in insurance contracts); General Statutes § 42-131c (unfair trade practices in trading stamps); General Statutes § 45-61f (h) (probate termination of parental rights); and General Statutes § 45-328 (e) (guardianship). Our rules of practice similarly distin-

guish between "factual findings" and conclusions of law. Practice Book § 4061; *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

Had the trial court failed to make any findings of fact, we would therefore, even now, have to remand this case for the articulation that the respondent had earlier sought to obtain. The record before us, though undesirably sparse, nonetheless is sufficient to warrant an inference about the factual underpinnings of the court's transfer order. We can deduce that an experienced trial court judge would not have found probable cause to believe that the respondent had committed murder without having impliedly found that the respondent had the requisite criminal intent to do so. The findings that the court made with respect to causality lend factual support to this conclusion. The court determined that there was probable cause to believe that the respondent killed the victim with a gun shot to the head after an argument about money. These findings could have been expressly relied upon to support a finding of probable cause to believe that the respondent specifically intended to kill the victim.

The deficiencies in the trial court's formal written findings could in any case have caused no harm to the respondent because, despite his contention to the contrary, the record establishes a sufficient evidentiary foundation for the trial court's implied conclusion that there was probable cause to believe that the respondent specifically intended to cause the death of the victim. Although it must transcend mere speculation, the evidentiary standard for probable cause is, of course, less demanding than that which is required to sustain a conviction at trial. *State* v. *Patterson,* 213 Conn. 708, 720, 570 A.2d 174 (1990); *State* v. *Mitchell,* 200 Conn. 323, 336, 512 A.2d 140 (1986); see also *Brinegar* v. *United States,* 338 U.S. 160, 176, 69 S. Ct. 1302, 93

L. Ed. 1879 (1949); *State* v. *Dennis,* 189 Conn. 429, 431–32, 456 A.2d 333 (1983). Viewing the proffered proof most favorably to the state, the court must decide whether the state's evidence would warrant a person of reasonable caution to believe that the respondent had committed the crime with which he was charged. In this case, the critical issue was whether the respondent had the requisite specific intent. "An intent to cause death may be inferred from circumstantial evidence such as the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading to and immediately following the death." *State* v. *Zdanis,* 182 Conn. 388, 396, 438 A.2d 696 (1980), cert. denied, 450 U.S. 1003, 101 S. Ct. 1715, 68 L. Ed. 2d 207 (1981); *State* v. *Chace,* supra, 105; *State* v. *Martin,* 195 Conn. 166, 170, 487 A.2d 177 (1985).

Applying the appropriate standard for proof of probable cause to the evidence produced at the respondent's transfer hearing, we have no doubt that the trial court properly concluded that the respondent specifically intended to kill his victim. The evidence demonstrates a close fit with the criteria enumerated in *State* v. *Zdanis,* supra. The respondent had a deadly weapon, which he fired at the victim's head, at close range, after taking hold of the victim by his shirt. The shooting followed a heated argument about money. In addition, the respondent was seen fleeing the scene immediately after the shooting. Although the respondent introduced other evidence suggesting that the shooting might have been accidental or unpremeditated, the trial court was entitled to resolve the assessment of the credibility of this testimony in favor of the state. *State* v. *Patterson,* supra, 720–24.

The judgment is affirmed.

In this opinion CALLAHAN, GLASS and COVELLO, Js., concurred.

SHEA, J., dissenting. I agree with the majority that there was sufficient evidence to support a finding that the respondent intended to kill the victim when he fired his gun at the victim's head. I also agree that "[t]he absence of an express judicial finding that the respondent had the requisite intent to cause the death of the victim when he shot him was an unwarranted departure from the mandate of [General Statutes] § 46b-127 for 'written findings . . .' " of probable cause.

I disagree, however, with the view of the majority that this court should plaster over this acknowledged disregard of the statute by assuming that the "trial court judge would not have found probable cause to believe that the respondent had committed murder without having impliedly found that the respondent had the requisite criminal intent to do so." We ourselves embark upon "an unwarranted departure" from the mandate of the statute when we thus ratify the failure of the trial court to make an express finding upon this issue, which presented virtually the only factual dispute at the transfer hearing.

This is not a case in which the respondent has failed to utilize established procedures for clearing up a deficiency in the record before presenting his appeal. He sought a further articulation from the trial court pursuant to Practice Book § 4051, and when that request was denied, he sought relief for that purpose from the Appellate Court and from this court pursuant to Practice Book § 4054 with no greater success. The fact that this court has previously denied his request is no reason to continue to refuse to grant what the majority acknowledges is mandated by § 46b-127, an express finding on the issue of probable cause to believe that the respondent intended to kill the victim as an essential element of the crime of murder.

It is not too late to give the respondent what § 46b-127 entitles him to receive by way of "written

findings" of probable cause. "If the supreme court deems it necessary to the proper disposition of the cause, it may remand the case for a further articulation of the basis of the trial court's factual findings or decision." Practice Book § 4061. Rather than treat as insignificant the trial court's "unwarranted departure" from the mandate of § 46b-127 in failing to make any finding of probable cause with respect to an essential element of the crime, this court should remand the case pursuant to § 4061 for a further articulation by the trial court. Such a procedure could be completed expeditiously and would not cause undue delay in the disposition of the appeal.

Accordingly, I dissent.