[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM RE TRANSFER
Following a fatal shooting on Arthur Street, New Haven at about 12:30 a.m. on August 13, 1990, Keijam T., born June 16, 1975, was taken into custody by the police. He charged as a delinquent for murder (Gen. Stat. 53a-54a) and seven other counts. The advocate filed a motion to transfer this child under the murder count to the regular criminal docket pursuant to Gen. Stat. 46b-127. A second transfer motion for the seven remaining counts was filed under 46b-126. The court granted a motion to proceed separately on the 46b-127 motion. CT Page 993
The court grants this motion as there is probable cause to believe the respondent committed the act for which he is charged.
 I.
Evidentiary procedures under 46b-127 were recently defined by the General Assembly, P.A. 90-136, effective October 1, 1990. cf. In Re Ralph, 211 Conn. 289, 559 A.2d 179 (1989). The court followed the formal procedure of the amended 46b-127, including the applicable procedure in 54-46a. State v. Magnano, 204 Conn. 259,528 A.2d 760 (1987); Jones v. Destruction, Inc. v. Upjohn,161 Conn. 191, 286 A.2d 308 (1971); Robbin v. Hartford Electric Light Co., 1 Conn. App. 109, 118, 468 A.2d 1266 (1983).
Based on the credible evidence presented and the law recited below, the court found probable cause. The respondent made a specific offer of proof. Because such evidence would be insufficient to rebut the finding of probable cause, the court did not allow the presentation of such evidence.
 II.
From the evidence developed at the hearing, the court finds certain facts for the purposes of this hearing. In re Edwin N.,215 Conn. 277, 575 A.2d 1016 (1990).
The victim was sixteen year old Tythron Blue (hereinafter Tythron) who died of a gunshot wound of chest and abdomen. The bullet entered on Tythron's right side: the trajectory of the medium caliber bullet was right to left and horizontal. The weapon was never recovered.
Approximately one week before this shooting, Keijam's mother complained about her car being shot up. About two hours before this shooting the mother accused Tythron of shooting up her car for $100. Keijam advised his mother not to worry, that Tythron would "get his". Tythron then went to the porch at 23 Arthur Street where other people had gathered.
There had been the sound of shots in the neighborhood that evening before the fatal shooting, Keijam had shot his weapon. During this time Keijam warned the people in the area not to go out.
Tythron and Moses James (hereafter Moses) left the porch at 23 Arthur Street to walk in the direction of Rossette Street. There are street lights on both sides of Arthur Street. As the two started walking, they heard a noise in the rear. They turned, saw nothing and the walk was resumed. Shots were fired. Moses then saw Keijam carrying an Uzi type weapon and Rodney Lewis CT Page 994 (hereinafter Rodney) showing a black hand gun. Keijam initially was by the side of 23 Arthur Street, or behind the two walkers. Running backward, Rodney was located on the opposite side of Arthur Street about five or six houses in front of Tythron and Moses. Moses ran for an alley to his right a few houses up on Arthur Street. After a moments hesitation, Tythron also ran into the alley, turning his right side toward Keijam. As they entered the alley, Keijam would have been behind the fleeing twosome. In the alley Tythron stopped and told Moses he was shot. Moses resumed running. When Moses returned, to Arthur Street, Tythron, bleeding and dying, was down in the middle of Arthur Street.
Someone named Tory who was ahead of the two walkers carried a shotgun, but that weapon played no role in the shooting.
As an eyewitness to this incident, Moses testified that only Keijam, not Rodney, could have fired the fatal shot into Tythron's right side. In any event assuming only two shooters, probable cause need not be exclusive.
 III.
Moses has consistently accused Keijam of shooting Tythron. His first signed statement confirmed by a tape recording, however, states Keijam came into the alley and there shot Tythron. At the hearing, Moses testified he didn't know if Keijam entered the alley and he believes that his friend was shot in the street. State v. Whelan, 200 Conn. 743, 753-754, 513 A.2d 86 (1986). His initial version was based on Tythron's complaint in the alley that he had been hit Moses was also nervous during the early interview. The police were aware of inconsistencies so the detectives undertook return interviews.
Although Moses described Keijam as a "friend", there is a history of antagonism between the James and Tucker families. Moses also admitted a felony conviction. 52-145; Heating Acceptance Corp. v. Patterson, 152 Conn. 467, 208 A.2d 341 (1965); State v. Grady, 153 Conn. 26, 211 A.2d 674 (1965). Nevertheless, Moses was a credible witness.
 IV.
The crime of murder involves proof of two, necessary factors: (1) that Keijam intended to cause a death and (2) that in accordance with that intent, he caused a death. Intent to cause death may be inferred from circumstantial evidence. At this stage, the proof level is probable cause ". . . the court must decide weather the states' evidence would warrant a person of reasonable caution to believe the respondent had committed the crime with CT Page 995 which he was charged." In re Edwin N., supra 284.
From the proof, the court concludes that the state's evidence does warrant such belief. Accordingly the court finds 1) probable cause that Keijam T. intended to cause a death and did cause the death of Tythron Blue on August 13 , 1990, and 2) hereby transfers the matter of Keijam T. to the regular criminal docket per 46b-127.
(This memorandum refers to individuals by first names to be consistent with the testimony).
SAMUEL S. GOLDSTEIN, JUDGE