## IN RE KEIJAM T.*
(14364)

SHEA, CALLAHAN, COVELLO, BORDEN and BERDON, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 2026, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Supreme Court.

Reporter of Judicial Decisions

110

Argued November 8, 1991—decision released February 4, 1992

*Kent Drager,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (respondent).

*Cathleen Mulligan Edwards,* state's advocate, for the appellee (petitioner).

BORDEN, J. The principal issues in this appeal concern the proper standards for a trial court to employ in determining (1) probable cause for purposes of transfer from the juvenile docket to the regular criminal docket pursuant to General Statutes (Rev. to 1991) § 46b-127, and (2) whether evidence contained in an accused's offer of proof under General Statutes

§ 54-46a would be sufficient to rebut an antecedent finding of probable cause. The juvenile respondent, Keijam T., appeals[1] from the order of the Superior Court for juvenile matters transferring him to the regular criminal docket, based upon a finding of probable cause to believe that he committed murder in violation of General Statutes § 53a-54a,[2] as alleged in a delinquency petition filed against him. The respondent claims that the court: (1) applied an improper standard to evaluate the state's evidence produced in the transfer hearing; (2) improperly concluded that, under the facts of this case, there could be two inconsistent findings of probable cause regarding the respondent and another purported assailant; (3) improperly precluded him from introducing evidence to rebut the court's finding of probable cause, in accordance with his offer of proof; and (4) found probable cause based on insufficient evidence. We reverse, and order a new transfer hearing.

The state filed a delinquency petition in the Superior Court against the respondent, who was then fifteen

[1] The respondent appealed to the Appellate Court from the transfer order of the trial court, and we transferred the appeal to this court pursuant to Practice Book § 4023.

[2] General Statutes § 53a-54a provides: "(a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime.

"(b) Evidence that the defendant suffered from a mental disease, mental defect or other mental abnormality is admissible, in a prosecution under subsection (a), on the question of whether the defendant acted with intent to cause the death of another person.

"(c) Murder is punishable as a class A felony in accordance with subdivision (2) of section 53a-35a unless it is a capital felony."

years of age,[3] claiming that he committed the serious juvenile offense of murder, in violation of General Statutes § 53a-54a, by intentionally causing the death of another person on August 13, 1990.[4] Thereafter, the state moved to transfer the respondent to the regular criminal docket pursuant to General Statutes § 46b-127.[5] After a hearing, the court granted the motion, and this appeal followed.

The court made the following written findings pursuant to § 46b-127. At approximately 12:30 a.m., on August 13, 1990, on Arthur Street in New Haven, the victim, Tythron Blue, was fatally shot by a medium caliber bullet that entered his right side. The trajectory of the bullet was from right to left, and was horizontal. The weapon was not recovered.

The court also found that approximately one week before the shooting, the respondent's mother had complained about her car being "shot up." The court further found that about two hours before the shooting, she had accused Blue of having done this, and the respondent had advised his mother not to worry, that Blue would "get his." In addition, on the evening of the shooting, the respondent had fired a weapon in the

[3] The transfer provisions of General Statutes § 46b-127 pertain to a child who has "attained the age of fourteen years."

[4] The petition also alleged delinquency by virtue of the serious juvenile offense of attempted murder in violation of General Statutes §§ 53a-54a and 53a-49, as well as the offenses of criminal use of a firearm, carrying a pistol without a permit, unlawful discharge of a firearm, reckless endangerment, and escape from Long Lane School.

[5] The state filed a simultaneous motion for transfer pursuant to General Statutes § 46b-126. That statute provides for transfer, under specified circumstances, to the regular criminal docket of children over the age of fourteen who are charged with certain serious juvenile offenses other than murder. That motion was based on the charge of attempted murder contained in the delinquency petition. See footnote 4, supra. The court severed that motion for transfer, and this appeal involves only the motion for transfer filed pursuant to General Statutes § 46b-127.

Arthur Street neighborhood, and had warned people in the area not to go outside.

The court further found that, on the night in question, Blue and Moses James were walking down Arthur Street together when they heard shots fired. James turned and saw the respondent on the same side of Arthur Street, behind him and Blue. The respondent was carrying an "Uzi type" weapon. James also saw Rodney Lewis on the opposite side of Arthur Street, approximately five or six houses in front of him and Blue. Lewis was carrying a black hand gun. James ran for an alley to his right a few houses up on Arthur Street and, after a moment's hesitation, Blue also ran into the alley. As Blue did so, he turned his right side toward the respondent, who was still behind the fleeing twosome. In the alley, Blue stopped and told James that he had been shot. James resumed running, and when he returned shortly thereafter to Arthur Street, Blue was bleeding and dying in the middle of the street.

The court further found that James, an eyewitness to the incident, testified that only the respondent, and not Lewis, could have fired the fatal shot into Blue's right side. The court also stated that, "[i]n any event assuming only two shooters, probable cause need not be exclusive." Moreover, the court found that, although there had been a history of antagonism between the families of the respondent and James, and James had a felony conviction, James "was a credible witness."

On the basis of these findings, the court found probable cause to believe that the respondent intended to cause and did cause the death of Blue. Accordingly, the court transferred the respondent to the regular criminal docket.

I

We turn first to the respondent's fourth claim, namely, that, irrespective of the first three claims, the

evidence was insufficient to support the court's finding of probable cause. We address this claim first because, if meritorious, it would result in a direction to the trial court to deny the state's transfer motion rather than a new transfer hearing, and, therefore, it would render consideration of the respondent's first three claims unnecessary. The respondent argues that: (1) the state's evidence was insufficient to establish probable cause because it was equally probable that Lewis, rather than the respondent, fired the fatal shot; and (2) the evidence was insufficient to establish probable cause regarding the respondent's mental state. We disagree.

General Statutes § 46b-127[6] requires, as a precondition to transfer from the docket for juvenile matters

[6] General Statutes (Rev. to 1991) § 46b-127 provides: "MANDATORY TRANSFER OF CHILD CHARGED WITH CERTAIN FELONIES TO REGULAR CRIMINAL DOCKET. The court shall transfer to the regular criminal docket of the superior court from the docket for juvenile matters: (1) Any child referred for the commission of a murder under sections 53a-54a to 53a-54d, inclusive, provided any such murder was committed after such child attained the age of fourteen years; (2) any child referred for the violation of any provision of title 53a which is designated as a class A felony, other than murder, if such violation was committed after such child attained the age of fourteen years, provided such child has previously been adjudicated a delinquent at any age for a violation of any provision of title 53a, which at the time of such violation was designated a class A felony; or (3) any child referred for the violation of any provision of title 53a which is designated as a class B felony, provided such violation was committed after such child attained the age of fourteen years, and further provided such child has previously been adjudicated delinquent for two violations of any provision of title 53a, which at the time of such violations were designated a class A or B felony. No such transfer shall be valid unless, prior thereto, the court has made written findings, after a hearing, that there is probable cause to believe that the child has committed the act for which he is charged. At such hearing, the child shall have the right to counsel and to confront the witnesses against him. The procedures provided in section 54-46a shall apply at such hearing, except that the child shall have the right to move to suppress any admission made by him on the ground that it was obtained in violation of the provisions of subsection (a) of section 46b-137 and to obtain discovery of exculpatory information. An order by the court under this section transferring a child from the docket for juvenile matters to the regular criminal

to the regular criminal docket, that the court find "that there is probable cause to believe that the child has committed the act for which he is charged," in this case, intentional murder. The standard for establishing probable cause is well established.

"The quantum of evidence necessary to establish probable cause at a preliminary hearing is less than the quantum necessary to establish proof beyond a reasonable doubt at trial. . . . *State* v. *Green,* 237 Kan. 146, 148, 697 P.2d 1305 (1985); *Myers* v. *Commonwealth,* 363 Mass. 843, 850, 298 N.E.2d 819 (1973); *State* v. *Dunn,* 121 Wis. 2d 389, 396, 359 N.W.2d 151 (1984). In making its finding, the court had to determine whether the government's evidence would warrant a person of reasonable caution to believe that the accused [had] committed the crime. Arenella, 'Reforming the Federal Grand Jury and the State Preliminary Hearing to Prevent Conviction Without Adjudication,' 78 Mich. L. Rev. 463, 478 (1980); *Brinegar* v. *United States,* 338 U.S. 160, 175–76, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949). *State* v. *Mitchell,* [200 Conn. 323, 336, 512 A.2d 140 (1986)]. The quantum of evidence necessary to establish probable cause exceeds mere suspicion, but

docket of the superior court shall be a final judgment for purposes of appeal. Upon the effectuation of the transfer, such child shall stand trial and be sentenced, if convicted, as if he were sixteen years of age, except that no such child shall be placed in a correctional facility but shall be maintained in a facility for children and youth until he attains the age of sixteen years or until he is sentenced, whichever occurs first. Such child shall receive credit against any sentence imposed for time served in a juvenile facility prior to the effectuation of the transfer. A child who has been transferred may enter a guilty plea to a lesser offense if the court finds that such plea is made knowingly and voluntarily. Any child transferred to the regular criminal docket who pleads guilty to a lesser offense shall not resume his status as a juvenile regarding said offense. If the action is dismissed or nolled or if such child is found not guilty of the charge for which he was transferred, the child shall resume his status as a juvenile until he attains the age of sixteen years."

This section was amended, effective July 1, 1991, but the amendments are not relevant to the issues in this appeal.

is substantially less than that required for conviction. Our cases have made clear that [t]here is often a fine line between mere suspicion and probable cause, and [t]hat line necessarily must be drawn by an act of judgment formed in light of the particular situation and with account taken of all the circumstances. *Brinegar* v. *United States,* supra, 176. *State* v. *Penland,* 174 Conn. 153, 155–56, 384 A.2d 356, cert. denied, 436 U.S. 906, 98 S. Ct. 2237, 56 L. Ed. 2d 404 (1978). *State* v. *Dennis,* 189 Conn. 429, 431–32, 456 A.2d 333 (1983); *State* v. *Acquin,* 187 Conn. 647, 657, 448 A.2d 163 (1982), cert. denied, 463 U.S. 1229, 103 S. Ct. 3570, 77 L. Ed. 2d 1411 (1983)." (Internal quotation marks omitted.) *State* v. *Patterson,* 213 Conn. 708, 720–21, 570 A.2d 174 (1990).

When reviewing a trial court's finding of probable cause made for purposes of a transfer pursuant to § 46b-127, "it is the function of this court to determine whether the decision of the trial court is clearly erroneous. See Practice Book [§ 4060]. . . . [W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the . . . decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980)." (Internal quotation marks omitted.) *In re Ralph M.,* 211 Conn. 289, 316, 559 A.2d 179 (1989). As in any case involving the challenge to a factual finding, we view the evidence and the permissible inferences therefrom in the light most favorable to sustaining the trial court's determination of probable cause. *Bridgeport Restoration Co.* v. *A. Petrucci Construction Co.,* 211 Conn. 230, 232, 557 A.2d 1263 (1989); *Cohen* v. *Cohen,* 182 Conn. 193, 202, 438 A.2d 55 (1980).

James testified that the respondent was behind him and Blue, on the same side of the street, and that Lewis

was in front of them, on the other side of the street. He testified that, as he and Blue were walking down Arthur Street, they heard a "thump," that they both turned around but saw nothing, and that they continued walking, with Blue behind James. James also testified that when he heard the shooting, he turned around again and saw the respondent behind them, shooting at them with an "Uzi type" weapon. He also testified that he and Blue then ran into an alley that was located on the same side of the street, and that as they "got in the alley" Blue was holding his side and saying, "Mo, I'm shot, Mo, I'm shot." Reviewing this evidence in the light most favorable to sustaining the finding of probable cause, we conclude that the court was entitled to infer that Blue turned to the right in order to enter the alley, exposing his right side to the respondent, and that as he did so, the respondent shot him in the right side.

It is true that James also testified that, before he and Blue ran into the alley, he saw Lewis across the street and in front of them, approximately five or six houses away from them. Lewis was shooting at them with a handgun while running backwards. It is also true, moreover, that James did not see Blue turn to the right into the alley, and that there was no ballistic evidence before the court that would have tied the bullet retrieved from Blue's body to an "Uzi type" weapon rather than to a handgun.

The respondent argues that, since James testified that both he and Blue turned around in response to a noise behind them, after which they both ran, it is equally inferable that Blue turned around to the left, exposing his right side to Lewis, who shot him as he did so. Therefore, the respondent contends, it is "mere speculation" that Blue was shot by the respondent when he turned to the right to go into the alley. We disagree.

The respondent mischaracterizes the pertinent parts of James' testimony. James did testify that, when they heard the "thump," both he and Blue turned around, but that was before the shooting began. He testified that, after turning around and seeing nothing, they continued walking. He also testified that then, when "somebody started shooting . . . *I* looked back," and saw the respondent shooting at them. (Emphasis added.) He did not testify that Blue also turned around in response to the noise of shooting. Thus, according to James' testimony, Blue's turn, on which the respondent rests his argument, was before and not during the shooting. Moreover, the court's finding that the respondent shot Blue in the right side was based upon the inference that the respondent did so as Blue turned right into the alley while fleeing, not that Blue was shot when he turned around in response to the noise of shooting.

Furthermore, we have held that, although proof beyond a reasonable doubt must preclude every reasonable hypothesis except that which supports the defendant's guilt; see *State* v. *Grant,* 219 Conn. 596, 602, 594 A.2d 459 (1991); *State* v. *Morrill,* 193 Conn. 602, 610, 478 A.2d 994 (1984); *State* v. *Foord,* 142 Conn. 285, 294, 113 A.2d 591 (1955); in determining whether the state has met its burden of proving guilt beyond a reasonable doubt the factfinder, in viewing evidence which could yield contrary inferences, is not precluded from drawing reasonable inferences consistent with guilt and is not required to draw those reasonable inferences consistent with innocence. *State* v. *Grant,* supra, 604. Certainly, the court has the same leeway in determining whether the state has met the much lower standard of establishing probable cause. Thus, the court was entitled to infer that Blue was shot as he turned to the right, rather than to the left.

The respondent's argument that the evidence was insufficient to establish his intent to kill is equally flawed. It is axiomatic that a factfinder may infer an intent to kill "from circumstantial evidence such as the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading to and immediately following the death." (Internal quotation marks omitted.) *In re Edwin N.*, 215 Conn. 277, 284, 575 A.2d 1016 (1990). Here, there was evidence of the respondent's animus toward Blue and his threat that Blue would "get his." There was also evidence that the respondent fired several shots at Blue with a deadly weapon from a short distance away. This evidence was sufficient to support a finding of probable cause that the respondent shot at Blue with the intent to kill him.

## II

We turn next to the respondent's first and third claims, which, as we view them, are closely related to each other. These claims are that the court applied an improper standard of evaluation to the state's evidence in arriving at its determination of probable cause, and that the court improperly precluded the respondent from introducing evidence that "would [have been] sufficient to rebut the finding of probable cause." General Statutes § 54-46a (b). We agree.

These claims arise out of the following procedural context. In conducting the transfer hearing pursuant to § 46b-127, the court, as required by that statute, followed the procedures provided by § 54-46a.[7] After the

[7] General Statutes § 54-46a provides: "PROBABLE CAUSE HEARING FOR PERSONS CHARGED WITH CRIMES PUNISHABLE BY DEATH OR LIFE IMPRISONMENT. (a) No person charged by the state, who has not been indicted by a grand jury prior to May 26, 1983, shall be put to plea or held to trial for any crime punishable by death or life imprisonment unless the court at a preliminary hearing determines there is probable cause to believe that the offense charged has been committed and that the accused person has com-

state had presented its evidence and the respondent had engaged in cross-examination of the state's witnesses, as was his right under § 54-46a, the court made an oral finding of probable cause to believe that the respondent committed the crime of murder by intentionally killing Blue. In making that finding, the court stated that it considered itself bound by our decision in *In re Edwin N.*, supra, "to look at the evidence presented by the prosecution in the light most favorable to the State . . . ."[8] The respondent objected to the

mitted it. The accused person may knowingly and voluntarily waive such preliminary hearing to determine probable cause.

"(b) Unless waived by the accused person or extended by the court for good cause shown, such preliminary hearing shall be conducted within sixty days of the filing of the complaint or information in superior court. The court shall be confined to the rules of evidence, except that written reports of expert witnesses shall be admissible in evidence and matters involving chain of custody shall be exempt from such rules. No motion to suppress or for discovery shall be allowed in connection with such hearing. The accused person shall have the right to counsel and may attend and, either individually or by counsel, participate in such hearing, present argument to the court, cross-examine witnesses against him and obtain a transcript of the proceedings at his own expense. At the close of the prosecution's case, if the court finds that, based on the evidence presented by the prosecution, probable cause exists, the accused person may make a specific offer of proof, including the names of witnesses who would testify or produce the evidence offered. The court shall not allow the accused person to present such evidence unless the court determines that such evidence would be sufficient to rebut the finding of probable cause.

"(c) If, from the evidence presented pursuant to subsection (b) of this section, it appears to the court that there is probable cause to believe that the accused person has committed the offense charged, the court shall so find and approve the continuance of the accused person's prosecution for that offense. A determination by the court that there is not probable cause to require the accused person to be put to trial for the offense charged shall not operate to prevent a subsequent prosecution of such accused person for the same offense."

[8] The court stated: "The *In re Edwin N.* [case] discusses the . . . rule . . . of probable cause in a transfer hearing. . . . [I]n that discussion, the Court indicated that in these transfer proceedings, the test would be, viewing the proffered proof most favorably to the State, a person of reasonable caution could believe that the respondent committed the crime of murder. So, that I have to look at the evidence presented by the prosecu-

court's use of that standard of evaluation of the evidence, claiming that such a deferential standard, although appropriate for appellate review of a finding of probable cause, was not the appropriate standard for a trial court to use in determining probable cause after an evidentiary hearing.

Thereafter, the respondent made the following three part oral offer of proof pursuant to § 54-46a (b)[9]: (1) at the time of the shooting, Rodney Lewis, who had been charged with attempted assault in connection with the incident, was not in front of James and Blue, as James had testified, but was behind them when James and Blue were walking down the street;[10] (2) within hours of the shooting, Lewis had admitted shooting Blue;[11] and (3) a "blood feud" existed between James' family and the respondent's family, that included the use of the criminal justice system by James and his family

---

tion in the light most favorable to the State, and determine whether a person of reasonable caution could believe, not beyond a reasonable doubt . . . that this respondent had committed the crime of murder. Namely, intended to kill somebody and did, indeed, kill somebody. And, under the standard of *In re Edwin N.*, 215 Connecticut 277, I think that 284 is the part I'm referring to. I would find that based on the evidence presented by the prosecution probable cause exists."

[9] See footnote 7, supra.

[10] The respondent supported this part of the offer of proof by stating that three witnesses who were on the street that night, namely, Kanisha Harvin, Nikole Shirley and Ann Marie Masonette, would testify that Lewis was behind James and Blue, not in front of them. The respondent also proffered the written statements of these witnesses, along with some diagrams they had made, that they had given to the New Haven police.

[11] The respondent offered to produce the testimony of Charles Steven Jones, Blue's uncle, that within hours of the shooting Lewis "yelled out the window and told me yes, I'm glad I shot your nephew and I'm glad he's dead." The respondent also offered to produce the corroborating testimony of Latisha Adkins and Kanisha Harvin that they heard Lewis say that to Jones, and that Harvin would testify further that Lewis was laughing when he said "yeah, I killed him, that's right, I killed him." The respondent also proffered the written statements of these witnesses in support of this part of his offer of proof.

against the respondent and his family.[12] The court ruled that the respondent would not be permitted to introduce this evidence because the "evidence would not be sufficient to rebut [the court's] finding of probable cause." In making this determination, the court stated that it viewed the offer of proof "most favorably to the State."[13] The respondent excepted to the court's ruling and specifically objected to "the ruling that you view the offer of proof in the light most favorable to the State."

We first consider the court's finding of probable cause, based solely upon the state's evidence. The court believed that, in deciding whether the state had established probable cause, it was required to view the state's evidence in the light most favorable to the state. Presumably, this meant that any inferences were to be drawn and any questions of credibility of witnesses were to be resolved in favor of, rather than contrary to, a finding of probable cause. The court based this belief; see footnote 8, supra; on the following language in *In re Edwin N.,* supra, 284: *"Viewing the proffered proof most favorably to the state,* the court must decide whether the state's evidence would warrant a person of reasonable caution to believe that the respondent had committed the crime with which he was charged." (Emphasis added.) We agree with the respondent that the trial court gave improper effect to the italicized language.

---

[12] In support of this allegation, the respondent offered to prove a series of specifically described incidents purporting to establish "a pattern of Moses James, his family, and associates using the criminal justice system to get back or get at [the respondent], and his brothers, and his family."

[13] The court stated that rebutting its finding of probable cause meant "that a person of reasonable caution wouldn't believe that he committed" the murder, and that this was to be done by comparing the offer of proof "even the defense material, most favorably to the State." The court also stated that "I don't believe that probable cause requires that I exclude all other possibilities at a probable cause level."

First, that language was dictum in the case. The issue under consideration in that part of *In re Edwin N.,* supra, was whether evidence was sufficient to support the trial court's implied finding of intent to commit murder, and not whether the standard applied by the trial court to the state's evidence was improper. Id., 283–84. Indeed, other language used by this court in that case underscored the trial court's role as a finder of facts based on its independent evaluation of the evidence produced in the transfer hearing. We noted, for example, that "the court could 'hear any evidence *that it determines to be reliable,* and that is material and relevant to the issue of probable cause.' " (Emphasis added.) Id., 281, quoting *In re Ralph M.,* supra, 307. We referred, also, to the need of the trial court "to make the *evidentiary findings* that warrant depriving the juvenile of the protections to which he would otherwise be entitled." (Emphasis added.) *In re Edwin N.,* supra, 282. Finally, in deciding that the trial court's implied finding of intent to kill was supported by the evidence, we stated: "Although the respondent introduced other evidence suggesting that the shooting might have been accidental or unpremeditated, *the trial court was entitled to resolve the assessment of credibility of this testimony in favor of the state."* (Emphasis added.) Id., 284.

Second, as *In re Edwin N.* itself makes clear, the probable cause determination depends on factual findings. Id., 282. Central to the factfinding process is the process of drawing inferences, and central to the process of drawing inferences is the notion that the factfinder is not required to draw only those inferences consistent with one view of the evidence, but may " 'draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical.' " *State* v. *Grant,* supra, 604, quoting *State* v. *Dumlao,* 3 Conn. App. 607, 616–17, 491 A.2d 404 (1985). It would be inconsistent with that notion to

require the trial court, engaged in a transfer hearing pursuant to § 46b-127, to view the state's evidence in the light most favorable to the state, because to do so would deprive the trial court of the necessary option of drawing inferences from such evidence that it deems to be reasonable and logical and that are unfavorable to the state.

Third, to limit the trial court to a favorable view of the state's evidence would be incompatible with the requirement of § 46b-127 that the transfer hearing be conducted according to the procedures of § 54-46a.[14] Those procedures include "the right [of the respondent] to . . . cross-examine witnesses against him . . . ." General Statutes § 54-46a (b). The principal purpose of cross-examination; "the greatest legal engine ever invented for the discovery of truth"; (internal quotation marks omitted) *State* v. *Brigandi,* 186 Conn. 521, 533, 442 A.2d 927 (1982); is to enable the factfinder to assess the credibility of the witness, and thus the truth of his testimony. Id. If the trial court were required to view the state's evidence in its most favorable light, the respondent's right of cross-examination would be largely irrelevant. We decline to read § 46b-127 to require such an incongruous result.

We do not conclude, of course, that the trial court in this case was required to view the state's evidence

---

[14] The history of the incorporation of General Statutes § 54-46a into General Statutes § 46b-127 is as follows. In *In re Ralph M.,* 211 Conn. 289, 559 A.2d 179 (1989), we held that § 46b-127, as it then provided, did not require that "strict evidentiary standards" be followed; id., 307; and that, therefore, hearsay was admissible at such a transfer hearing "as long as the court properly determined that it was relevant and reliable." Id., 310. One of the principal bases for this conclusion was the fact that § 46b-127, which at that time made no reference to § 54-46a, omitted the language of § 54-46a that a probable cause hearing "shall be confined to the rules of evidence . . . ." Id., 305–306. Thereafter, the legislature enacted No. 90-136 of the 1990 Public Acts, which incorporated, with certain exceptions not relevant here, the procedures of § 54-46a into § 46b-127.

in its least favorable light, or that it was barred from drawing any reasonable and logical inferences from that evidence that were favorable to the state. We hold only that it was required to arrive at its determination of whether the state had established probable cause unfettered by the view that it must draw all inferences and resolve any questions of credibility favorably to the state.

Thus, the trial court's role in determining probable cause in an evidentiary hearing pursuant to § 46b-127 is similar to its role in other factfinding proceedings: it must consider all the evidence before it, including any frailties therein disclosed by cross-examination; it must draw whatever inferences therefrom that it considers to be reasonable and logical; and it must decide whether that evidence, including those inferences, would warrant a person of reasonable caution to believe that the respondent committed the crime with which he is charged. The only difference between this proceeding and other factfinding proceedings is that the level of certainty required in this proceeding is considerably lower than in other proceedings. Proof of probable cause is not as demanding as proof by a fair preponderance of the evidence; *Ledgebrook Condominium Assn., Inc.* v. *Lusk Corporation,* 172 Conn. 577, 584, 376 A.2d 60 (1977); *Newtown Associates* v. *Northeast Structures, Inc.,* 15 Conn. App. 633, 636, 546 A.2d 310 (1988); and is substantially less demanding than proof beyond a reasonable doubt. *State* v. *Patterson,* supra, 720. Although "[t]he quantum of evidence necessary to establish probable cause exceeds mere suspicion . . . [t]here is often a fine line between mere suspicion and probable cause, and [t]hat line necessarily must be drawn by an act of judgment formed in light of the particular situation and with account taken of all the circumstances." (Internal quotation marks omitted.) Id.

It follows from this conclusion that the trial court also applied an improper standard to the respondent's offer of proof. If it is inconsistent with the provisions of § 54-46a to view the state's evidence most favorably to the state in determining whether the state has established probable cause, a fortiori it is inconsistent with those provisions to view the respondent's offer of proof, made in an attempt "to rebut the finding of probable cause"; General Statutes § 54-46a (b); most favorably to the state, as the court did in this case.

Under § 54-46a (b), if the court finds probable cause based on the state's evidence, "the accused person may make a specific offer of proof, including the names of witnesses who would testify or produce the evidence offered." The accused only gains the right to present that evidence if "the court determines that such evidence would be sufficient to rebut the finding of probable cause." General Statutes § 54-46a (b). The purpose of this procedure is to protect the proceeding from evidence that, even if believed, would not undermine the court's antecedent finding of probable cause while, at the same time, safeguarding the accused's interest in attempting to persuade the court that, despite the state's evidence, based upon all the available evidence probable cause is lacking.

Applying this standard to the respondent's offer of proof, we conclude that the court improperly refused to permit him to present the evidence he offered. In this respect, it is significant that: (1) Blue was shot and killed by only one bullet; (2) there was no ballistic evidence identifying that bullet as having come from either the respondent's or Lewis' weapon; and (3) the state did not claim in the trial court, and specifically disclaimed in oral argument in this court, that the respondent was criminally liable as an accessory. The state's sole theory is that the respondent fired the fatal shot, and that, although the evidence indicates that they were

shooting at Blue virtually simultaneously, the respondent and Lewis were not acting in concert with or in aid of each other.

The respondent offered to produce evidence that: (1) Lewis was shooting at Blue from behind and not from in front of Blue; (2) Lewis admitted to having shot and killed Blue; and (3) James had a motive to incriminate the respondent. On the basis of this evidence, the trial court could have found probable cause that Lewis shot Blue as Blue turned to the right into the alley. In short, if the court credited the evidence that the respondent offered to produce, that evidence could have provided a basis for a determination by the trial court that its finding of probable cause that the respondent killed Blue was rebutted.[15] Under these circumstances, the court improperly precluded the respondent from introducing this evidence in the transfer hearing.

This does not mean, of course, that the trial court in this case was required to credit that evidence, or to conclude from it that the finding of probable cause was rebutted.[16] It means only that the court was required to view the offer of proof in the appropriate light, then to permit the respondent to introduce the evidence, and then to exercise its judgment and to determine, based upon all the evidence—the state's and the respondent's—whether there was probable cause to believe that the respondent intentionally killed Blue.

[15] For example, the court could have found probable cause from this evidence that, because James had a motive to incriminate the respondent, his testimony was not worthy of belief, and that it was Lewis, rather than the respondent, who shot Blue.

[16] For example, the court could have credited the respondent's evidence but nonetheless concluded that its antecedent finding of probable cause was not rebutted. Under this scenario, the court could have found probable cause that, despite James' motive to incriminate the respondent, James' testimony was worthy of belief, and that, despite the testimony placing Lewis behind Blue, it was the respondent who shot Blue.

These conclusions render it unnecessary to consider the respondent's remaining claim on appeal, namely, that the court improperly concluded that, under the facts of this case, there could be two inconsistent findings of probable cause. That claim rests on a supposition that it would be improper for the same trial court to find probable cause both that (1) the respondent killed Blue, and (2) Lewis killed Blue. Since the court did not make such findings, we leave the resolution of that issue to a case that properly presents it.

The order of transfer is reversed, and the case is remanded for a new transfer hearing.

In this opinion the other justices concurred.