## In re David M.*
## (11126)

Foti, Heiman and Cretella, Js.

Argued September 30—decision released November 17, 1992

*Sara R. Martin,* for the appellant (respondent).

*Cathleen Mulligan Edwards,* state's advocate, for the appellee (petitioner).

Foti, J. This is an appeal from an order of the Superior Court for Juvenile Matters at New Haven, trans-

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 4166B.2, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

ferring the respondent, David M., to the regular criminal docket of the Superior Court to be tried and, if convicted, sentenced as an adult. The respondent alleges that the court improperly ordered his transfer in that the evidence was insufficient to establish probable cause (1) that he aided in the commission of the murder, and (2) that the death was caused with the requisite intent. He further claims that the court improperly determined that a finding of probable cause for his transfer was not precluded by a finding made by another trial court that probable cause did not exist with respect to an adult codefendant.

On June 12, 1991, the state's advocate filed a motion to transfer the respondent to the regular docket pursuant to General Statutes § 46b-127.[1] David M. was

---

[1] General Statutes § 46b-127, prior to July 1, 1991, provided: "The court shall transfer to the regular criminal docket of the superior court from the docket for juvenile matters: (1) Any child referred for the commission of a murder under sections 53a-54a to 53a-54d, inclusive, provided any such murder was committed after such child attained the age of fourteen years; (2) any child referred for the violation of any provision of title 53a which is designated as a class A felony, other than murder, if such violation was committed after such child attained the age of fourteen years, provided such child has previously been adjudicated a delinquent at any age for a violation of any provision of title 53a, which at the time of such violation was designated a class A felony; or (3) any child referred for the violation of any provision of title 53a which is designated as a class B felony, provided such violation was committed after such child attained the age of fourteen years, and further provided such child has previously been adjudicated delinquent for two violations of any provision of title 53a, which at the time of such violations were designated a class A or B felony. No such transfer shall be valid unless, prior thereto, the court has made written findings, after a hearing, that there is probable cause to believe that the child has committed the act for which he is charged. At such hearing, the child shall have the right to counsel and to confront the witnesses against him. The procedures provided in section 54-46a shall apply at such hearing, except that the child shall have the right to move to suppress any admission made by him on the ground that it was obtained in violation of the provisions of subsection (a) of section 46b-137 and to obtain discovery of exculpatory information. An order by the court under this section transferring a child from the docket for juvenile matters to the regular criminal docket of the superior court shall be a final judgment for purposes of appeal. Upon the

arrested on a warrant and charged in a petition of delinquency with criminal liability for murder in violation of General Statutes §§ 53a-8 and 53a-54a[2] for an incident that occurred on May 8, 1991. At that time, David M. was fifteen years of age. After a full evidentiary hearing, the motion of the state's advocate was granted.[3] The court found that there was "probable cause that David M. intentionally aided the shooters . . . and that in so aiding, he intended to commit the crime of murder."

The court found the following facts. On May 8, 1991, at approximately 7:30 p.m., a group including David

effectuation of the transfer, such child shall stand trial and be sentenced, if convicted, as if he were sixteen years of age. Such child shall receive credit against any sentence imposed for time served in a juvenile facility prior to the effectuation of the transfer. A child who has been transferred may enter a guilty plea to a lesser offense if the court finds that such plea is made knowingly and voluntarily. Any child transferred to the regular criminal docket who pleads guilty to a lesser offense shall not resume his status as a juvenile regarding said offense. If the action is dismissed or nolled or if such child is found not guilty of the charge for which he was transferred, the child shall resume his status as a juvenile until he attains the age of sixteen years."

[2] General Statutes § 53a-8 provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

General Statutes § 53a-54a (a) provides: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

[3] The execution of the transfer order has been stayed pending this appeal. See *In re Bromell G.*, 214 Conn. 454, 572 A.2d 352 (1990).

M. drove in two cars to the corner of Winthrop and Davenport Avenues in New Haven. The first car was an old gray Mazda station wagon; the second was an old brown Chevrolet Malibu Classic. David M. was the driver of the gray car, which also contained a passenger. The brown car was driven by "Chuito" and contained a passenger called "Puto." At the corner of Winthrop and Davenport Avenues, the group encountered the victim, Elvis Crnkovic, and his brother, Paul Crnkovic, who were playing basketball at a hoop on an abandoned store across the street from their home. The brothers played there almost every day.

Trouble had existed between Paul Crnkovic and David M. for about a year. Approximately two weeks earlier, David M. had assaulted Paul Crnkovic in front of a courthouse. There had also been a shooting in front of a drug store involving Paul Crnkovic and the "Liberty Street" gang, of which David M. was a member. Earlier in the day on May 8, 1991, charges against Paul Crnkovic, who had been arrested for that shooting, were dropped.

When the brown car was about nine or ten feet from the victim and his brother, and the gray car was about eleven or twelve feet from them, Paul Crnkovic observed a gun being held out of the passenger side window of the brown car. Two shots were fired, and Elvis Crnkovic screamed. At that time, the cars were moving very slowly. The Crnkovic brothers then began running down the sidewalk parallel to Davenport Avenue away from the corner, toward Kossuth Street. As Paul Crnkovic ran, he looked back to see the passenger shooting from the gray car. As many as nine shots were fired from both cars in the boys' direction. The passenger in the gray car was firing; the driver, David M., was not.

After both cars had left the scene, Paul Crnkovic turned into an alley. Elvis Crnkovic, who had been shot once in the back, was lying face down on the sidewalk along Davenport Avenue. The trial court found that the shot that killed him apparently was fired from the brown car.

## I

The respondent claims that the evidence presented at the transfer hearing was insufficient to show that he aided the principal in causing the death of Elvis Crnkovic, and failed to show that the death was caused with intent to kill as opposed to less culpable mental states.

On appeal, our function is to determine whether the trial court's decision that probable cause existed was clearly erroneous. Practice Book § 4061; *In re Lloyd W.,* 28 Conn. App. 608, 611, 611 A.2d 461 (1992). "[W]here the factual basis of the court's decision is challenged we must first determine whether the facts set out in the . . . decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980). . . . *In re Ralph M.,* 211 Conn. 289, 316, 559 A.2d 179 (1989)." (Internal quotation marks omitted.) *In re Lloyd W.,* supra. The quantum of evidence required to establish probable cause is less than that required to establish proof beyond a reasonable doubt at trial. It is more than mere suspicion but substantially less than that required for conviction. *In re Keijam T.,* 221 Conn. 109, 115–16, 602 A.2d 967 (1992). Moreover, in viewing this evidence and the permissible inferences drawn from it to determine whether the decision was clearly erroneous, we do so in the light most favorable to sustaining the trial court's determination of probable cause. Id., 116.

"In the present case, because the respondent was charged as an accessory to murder under §§ 53a-8 and 53a-54a, the court was required to determine whether there was probable cause to believe that the respondent 'intended both to aid the principal *and* to commit the underlying [crime of murder].' " (Emphasis in original.) *In re Ralph M.*, supra. A finding of probable cause requires "only a 'determina[tion] [of] whether the government's evidence would warrant a person of reasonable caution to believe' that the respondent acted with the intent to kill another person." Id., 316–17. The trial court here specifically found that probable cause had been established that the respondent "intentionally aided the shooters in the brown and gray cars and that in so aiding, he intended to commit the crime of murder."

The respondent argues that the evidence merely established that he was in a car other than that from which the fatal bullet was fired, and that he did not shoot from the car that he was driving. The evidence, he contends, did not show that he acted in concert with the occupants of the other car, or that the occupants of both cars came to the neighborhood together with the intent to murder. Thus, he claims that the evidence was insufficient to establish probable cause that he aided and abetted the person who fired the fatal shot, or that he had the requisite intent to murder anyone. We disagree.

"Whether a person who is present at the commission of a crime aids or abets its commission so as to be criminally liable depends on the circumstances surrounding his presence there and his conduct while there." *State* v. *Crump,* 201 Conn. 489, 495, 518 A.2d 378 (1986). The record is clear that the respondent was not passively acquiescent nor acting in an innocent fashion. See *State* v. *Haddad,* 189 Conn. 383, 399, 456 A.2d 316 (1983). There was sufficient circumstantial evidence to establish that the occupants of the two cars knew

each other and were acting in concert. The evidence shows that the two cars were operated in such a way as to "cut off" the victim and his brother from possible avenues of escape. The cars arrived together and left together, and the respondent had full control of the vehicle that he was operating so as to slow down, speed up, direct it to a place where shots could be fired by the passenger, or drive off.

There is, of course, "no legal distinction between direct and circumstantial evidence so far as probative force is concerned." *State* v. *Wilson,* 178 Conn. 427, 434, 423 A.2d 72 (1979). Further, in a case involving a substantial amount of circumstantial evidence, the cumulative impact of a multitude of facts may give rise to probable cause. *State* v. *Perez,* 183 Conn. 225, 227, 439 A.2d 305 (1981). It is entirely reasonable for the trier of the facts to find that the criminal activity of the occupants of both cars did not happen coincidentally. As the trial court correctly stated, under the circumstances of this case "[i]t should make no difference legally from which car the fatal shots were fired that night as these facts show that the other three were acting together aiding whoever fired the fatal shot." The evidence was sufficient to support a finding of probable cause that the respondent aided the principal in causing death.

The respondent also contends that the evidence was insufficient to establish probable cause (1) that the shot that killed the victim was fired by one specifically intending to kill rather than to injure or one with reckless indifference or (2) that he himself had the specific intent to kill rather than a lesser mental state.

A factfinder may infer an intent to kill from circumstantial evidence; *In re Lloyd W.,* supra, 611–12; including the manner in which the cars were operated, the number of shots fired, and the events leading to and

immediately following the death. See *State* v. *Bewry*, 26 Conn. App. 242, 245–47, 600 A.2d 787 (1991), cert. denied, 221 Conn. 911, 602 A.2d 11 (1992). The court stated that implicit in its findings was that "an agreement existed among participants in both cars to drive to that area and kill Paul Crnkovic but also equally implicit in the findings is that David M.'s conduct evinced more than mere connection with a plan or conspiracy."

The evidence showed that the respondent and Paul Crnkovic, the probable intended victim, had fought and had feelings of ill will for each other for some time prior to the shooting. The evidence further showed that the respondent drove someone who was holding a gun and participated while that passenger fired repeatedly at close range at the Crnkovic brothers. The respondent maneuvered his vehicle while someone in another car also shot at the victim and the victim's brother. According to Paul Crnkovic, the respondent was the only person in either automobile who had a reason to shoot at him.

We conclude that the evidence was sufficient to support a finding that the respondent possessed the requisite intent to aid in the murder, taking into account all of the facts and circumstances that existed.

## II

In his final claim, the respondent argues that a finding of probable cause was precluded not only because there was insufficient evidence at the transfer hearing, but also because evidence adduced at another probable cause hearing for an adult on the regular criminal docket, conducted pursuant to General Statutes § 54-46a,[4] resulted in a finding of no probable cause.

[4] General Statutes § 54-46a (a) provides in pertinent part: "No person charged by the state, who has not been indicted by a grand jury prior to May 26, 1983, shall be put to plea or held to trial for any crime punishable by death or life imprisonment unless the court at a preliminary hearing

The respondent contends that, while those proceedings were not brought to the attention of the trial court, we should take judicial notice of the file and reverse the order of transfer.

There is no question that the trial court may take judicial notice of the file in another case, whether or not the other case is between the same parties. *Karp* v. *Urban Development Commission,* 162 Conn. 525, 527, 294 A.2d 633 (1972); *Guerriero* v. *Golasso,* 144 Conn. 600, 605, 136 A.2d 497 (1957). "[I]t is understood that 'matter[s] which it is claimed the court should judicially notice should ordinarily be called to its attention by a party seeking to take advantage of it in the course of presenting evidence in the case so that, if there is ground upon which it may be contradicted or explained, the adverse party will be afforded an opportunity to do so . . . .' *Nichols* v. *Nichols,* 126 Conn. 614, 622, 13 A.2d 591 (1940)." *Caccavale* v. *Hospital of St. Raphael,* 14 Conn. App. 504, 509, 541 A.2d 893, cert. denied, 208 Conn. 812, 545 A.2d 1107 (1988). Judicial notice may, however, be taken at any stage of the proceedings including on appeal. *State* v. *Allen,* 205 Conn. 370, 382, 533 A.2d 559 (1987). Nevertheless, we decline to do so here.

Even if the trial court had been made aware of the proceedings in which no probable cause was found, it would not have been bound by that decision under the doctrine of res judicata, since the parties were not the same. *Fox* v. *Schaeffer,* 131 Conn. 439, 448, 41 A.2d 46 (1944). Further, the evidence and witnesses in that proceeding may have been different from those presented at the respondent's transfer hearing. For the same reason, this court's taking judicial notice of the

determines there is probable cause to believe that the offense charged has been committed and that the accused person has committed it. The accused person may knowingly and voluntarily waive such preliminary hearing to determine probable cause."

decision of another hearing would serve no purpose in determining whether the court's finding of probable cause here was clearly erroneous. The trial court had to determine whether the evidence presented before it, together with the inferences reasonably and logically drawn from that evidence, was sufficient for a finding of probable cause; *In re Keijam T.*, supra, 125; it could not rely on matters not presented or give weight to the conclusions in another action involving different parties.

On the basis of the entire record, we cannot say that the court's finding of probable cause was clearly erroneous.

The order of transfer is affirmed.

In this opinion the other judges concurred.