## STATE OF CONNECTICUT *v.* ANGEL TORO
### (AC 20726)

Foti, Spear and Dranginis, Js.

Argued January 8—officially released April 10, 2001

*William B. Westcott*, special public defender, for the appellant (defendant).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, *Robin S. Schwartz*, special deputy assistant state's attorney, and *Herman Woodard, Jr.*, former deputy assistant state's attorney, for the appellee (state).

DRANGINIS, J. The defendant, Angel Toro, appeals from the judgment of conviction, rendered after a jury trial, of robbery in the second degree in violation of General Statutes § 53a-135, robbery by carjacking in violation of General Statutes § 53a-136a and larceny in the second degree in violation of General Statutes § 53a-123. On appeal, the defendant claims that his conviction was not supported by sufficient evidence of a taking as required under each of the counts charged and, therefore, violates his state and federal constitutional rights to due process. We affirm the judgment of the trial court.

The following facts underlie the defendant's arrest and conviction. On December 31, 1995, Bacillio Cortes rented a white Ford Escort to chauffeur friends and family on New Year's Eve. At approximately 10 p.m., Cortes was driving two passengers from a location at Kensington Street in Hartford to a location at Hudson Street when Cortes noticed a red Pontiac Fiero pull up next to him at a red traffic light. The driver of the Fiero spun the car's tires. When the light turned green, Cortes drove slightly ahead of the Fiero and, at the next light, turned right. Shortly before Cortes reached his destination at Hudson Street, the Fiero rear-ended the Escort. At that time, Cortes and the driver of the Fiero, later identified as the defendant, exited their cars to inspect the damage. Cortes' two passengers also exited the vehicle and retreated to their nearby apartment. The defendant's passenger remained seated in the Fiero.

According to Cortes, the defendant then approached with his hand in his pocket as if he were holding a gun. Cortes, in fear, told the defendant that there was no damage and that he could leave. The defendant, however, punched Cortes in the face, and Cortes returned the punch in self-defense. Cortes testified that the defendant then "backed up and told his friend that I

don't respect him, for him to go in the car and get the gun." From that statement, Cortes inferred that the defendant did not have a gun on his person and that he could run safely into the apartment. Cortes further testified that the defendant's passenger got into the Escort while the defendant got back into the Fiero, and they both drove away. Cortes then called the police.

Officer Patrick Farrell of the Hartford police department responded to the call and saw an Escort traveling on Babcock Street. He testified that the vehicle only had one occupant. When the Escort started speeding away, a car chase ensued. Farrell followed the vehicle to Putnam Street, where it went into the backyard of 142 Putnam Street. He testified that approximately fifteen to twenty minutes had passed since he first heard the report of the carjacking and when he saw the Escort and followed it to the Putnam Street location.

At the Putnam Street location, Farrell found the Escort unoccupied with its engine running and the driver's side door open. Farrell testified that he heard a chain-link fence rattle, looked around the corner and saw no one. He then ran to the front of the house, where an unidentified citizen indicated to him that the person the police were after went in the direction of a nearby school yard. The defendant was then spotted in the school yard about 100 feet from the Escort and was caught after a foot chase. Meanwhile, the red Fiero was located on Putnam Street, approximately thirty feet from the white Escort. The defendant's passenger was never apprehended or charged.

At trial, the defendant testified that he was driving the red Fiero when he accidentally rear-ended Cortes' vehicle on Hudson Street. He admitted that he and Cortes had exited their cars to assess the damage, but denied that they got into a fistfight. He testified that his passenger, his cousin, drove away in the Escort, but

that he did not know that his cousin would do so. He claimed that he got back into his vehicle and drove to his aunt's house, where he stopped the Fiero. He further testified that he felt ill, vomited and remained near his car until his cousin pulled up in the Escort and yelled to him to run. The defendant then ran and was caught.

On appeal, the defendant claims that the evidence was insufficient to establish a taking.[1] Specifically, he claims that each charge requires that the state prove beyond a reasonable doubt that he took the white Escort. He claims that the jury could not reasonably conclude that he took the victim's vehicle. The defendant concedes that under the relevant statutes, a taking may occur even though there is not a carrying away of the property, i.e., even though he did not drive the vehicle away. He does not claim, therefore, that the evidence was insufficient merely because it showed that the defendant's passenger (his cousin), rather than the defendant, drove the white Escort. Rather, he maintains that the evidence, at most, shows that he was an accessory to larceny, a crime with which he was not charged.

We must first consider whether the defendant's claim is reviewable. At trial, the defendant did not make a motion for a judgment of acquittal on the basis of insufficient evidence of a taking. He seeks review, therefore, under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[2] It is well settled that claims of insufficiency of

---

[1] The defendant does not argue on appeal that the evidence was insufficient to support a finding by the jury that he intended to deprive the victim of his vehicle.

[2] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the

the evidence are reviewable under *Golding* because any defendant found guilty on the basis of insufficient evidence has been deprived of his constitutional rights not to be convicted except on evidence that convinces the jury beyond a reasonable doubt of the existence of every element of the offenses at issue. *State* v. *Hicks*, 56 Conn. App. 384, 386–87, 743 A.2d 640 (2000); see *State* v. *Adams*, 225 Conn. 270, 275–76 n.3, 623 A.2d 42 (1993). The state contends that the defendant's claim is not actually an insufficiency of the evidence claim, but is one of instructional error and is, therefore, not properly preserved or briefed for appeal. We conclude, however, that the defendant's claim is essentially a challenge to the sufficiency of the evidence and therefore warrants review.

"The standards by which we review claims of insufficient evidence are well established. When reviewing a sufficiency of the evidence claim, our courts apply a two-prong[ed] test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"It is within the province of the jury to draw reasonable and logical inferences from the facts proven. . . . The jury may draw reasonable inferences based on other inferences drawn from the evidence presented. . . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable. . . . We note that the probative force of the evidence is not diminished because it consists, in whole or in part, of

defendant's claim will fail." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

circumstantial evidence rather than direct evidence.
. . . It has been repeatedly stated that there is no legal
distinction between direct and circumstantial evidence
so far as probative force is concerned. . . . It is not
one fact, but the cumulative impact of a multitude of
facts which establishes guilt in a case involving substan-
tial circumstantial evidence. . . . [T]he inquiry into
whether the record evidence would support a finding
of guilt beyond a reasonable doubt does not require a
court to ask itself whether it believes that the evidence
. . . established guilt beyond a reasonable doubt. . . .
Instead, the relevant question is whether, after viewing
the evidence in the light most favorable to the prosecu-
tion, any rational trier of fact could have found the
essential elements of the crime beyond a reasonable
doubt. . . . In doing so, we keep in mind that [w]e have
not had the jury's opportunity to observe the conduct,
demeanor, and attitude of the witnesses and to gauge
their credibility. . . .

"Moreover, [i]n evaluating evidence that could yield
contrary inferences, the [jury] is not required to accept
as dispositive those inferences that are consistent with
the defendant's innocence. . . . As we have often
noted, proof beyond a reasonable doubt does not mean
proof beyond all possible doubt . . . nor does proof
beyond a reasonable doubt require acceptance of every
hypothesis of innocence posed by the defendant that,
had it been found credible by the [jury], would have
resulted in an acquittal. . . . On appeal, we do not ask
whether there is a reasonable view of the evidence that
would support a reasonable hypothesis of innocence.
We ask, instead, whether there is a reasonable view of
the evidence that supports the jury's verdict of guilty.
. . . Furthermore, [t]his court cannot substitute its own
judgment for that of the jury if there is sufficient evi-
dence to support the jury's verdict. . . .

"It is also the absolute right and responsibility of the jury to weigh conflicting evidence and to determine the credibility of the witnesses. . . . Thus, the issue of the identification of the defendant as the perpetrator of the crime is peculiarly an issue of fact to be resolved by the jury. . . .

"The test for determining whether the evidence is sufficient to sustain a verdict is thus whether the [trier of fact] could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Bradley*, 60 Conn. App. 534, 540–41, 760 A.2d 520, cert. denied, 255 Conn. 921, 763 A.2d 1042 (2000).

In the present case, each charge requires that the state prove that the defendant committed a larceny.[3] Pursuant to General Statutes § 53a-119, "[a] person

---

[3] General Statutes § 53a-123 (a) provides in relevant part: "A person is guilty of larceny in the second degree when he commits larceny, as defined by section 53a-119, and: (1) The property consists of a motor vehicle, the value of which exceeds five thousand dollars . . . ."

General Statutes § 53a-135 (a) provides in relevant part: "A person is guilty of robbery in the second degree when he commits robbery as defined in section 53a-133 and . . . (2) in the course of the commission of the crime or of immediate flight therefrom he or another participant in the crime displays or threatens the use of what he represents by his words or conduct to be a deadly weapon or a dangerous instrument."

General Statutes § 53a-133 provides: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of . . . (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

General Statutes § 53a-136a provides: "Any person who commits robbery by taking a motor vehicle from the person of another knowing that such motor vehicle is occupied by such other person shall be imprisoned for a term of three years which shall not be suspended and shall be in addition and consecutive to any term of imprisonment imposed for such offense."

commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ." The elements of larceny are "(1) the wrongful taking or carrying away of the personal property of another; (2) the existence of a felonious intent in the taker to deprive the owner of it permanently; and (3) the lack of consent of the owner." (Internal quotation marks omitted.) *State* v. *Kimber*, 48 Conn. App. 234, 240, 709 A.2d 570, cert. denied, 245 Conn. 902, 719 A.2d 1164 (1998). Because "taking" is not defined in the Penal Code, we consider the ordinary usage of that term. *State* v. *Garcia*, 37 Conn. App. 619, 627, 657 A.2d 691, cert. denied, 234 Conn. 917, 661 A.2d 97 (1995); see also General Statutes § 1-1 (a) ("[i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly").

A criminal taking is "[t]he act of seizing an article, with or without removing it, but with an implicit transfer of possession or control." Black's Law Dictionary (7th Ed. 1999). Thus, to prove that the defendant took the victim's vehicle, the state needed to establish that the defendant seized the vehicle from the victim's power and control. See Webster's Third New International Dictionary (defining "take" as "1: to get into one's hands or into one's possession, power, or control by force or stratagem: as a: to seize or capture physically . . . 6: to transfer into one's own keeping: enter into or arrange for possession, ownership, or use of").

Construed in the light most favorable to sustaining the verdict, the evidence established that the defendant took the victim's vehicle. On the basis of the evidence presented, the jury reasonably could have concluded

that the defendant purposefully rear-ended the victim's vehicle so that the victim would exit the vehicle. The evidence further showed that when the victim did so to assess the damage and exchange information, the defendant started an altercation with the victim and represented, by his conduct and body language, that he was armed. He yelled at and punched the victim, and, when the victim punched him back, the defendant called to his passenger to bring him a gun. From those facts and the inferences reasonably drawn therefrom, the jury reasonably could have concluded that the cumulative effect of the evidence established beyond a reasonable doubt that the defendant compelled the victim to relinquish possession and control of his vehicle, and to deliver it to the defendant. The evidence, therefore, was sufficient to sustain the conviction of robbery in the second degree, larceny in the second degree and robbery by carjacking.

The judgment is affirmed.

In this opinion the other judges concurred.