STATE OF CONNECTICUT *v.* JORGE ORTA
(AC 20282)

Lavery, C. J., and Spear and Shea, Js.

Argued May 2—officially released November 13, 2001

*Darcy McGraw*, special public defender, for the appellant (defendant).

*Joy K. Fausey*, deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Gary W. Nicholson*, assistant state's attorney, for the appellee (state).

*Opinion*

SHEA, J. The defendant, Jorge Orta, has appealed from the judgment of conviction, rendered after a jury trial, of accessory to manslaughter in the first degree in violation of General Statutes §§ 53a-55[1] and 53a-8 (a),[2] for which the trial court imposed a sentence of incarceration of twelve years. On appeal, the defendant claims that (1) the evidence at trial was insufficient to support the verdict, (2) the court improperly charged the jury, thereby creating confusion on the element of intent, and (3) the court improperly charged the jury on the meaning of reasonable doubt. We affirm the judgment of the trial court.

From the evidence presented at trial, the jury reasonably could have found the following facts. On May 8, 1991, at about 7:30 p.m., the victim, Elvis Crnkovic, and his brother, Paul Crnkovic, were playing basketball on the premises of an abandoned store diagonally across

---

[1] General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person . . . ."

[2] General Statutes § 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

the street from their home at 298 Davenport Avenue in New Haven. As they were playing, a gray car and a brown car that followed closely behind proceeded by the store, and gunshots were fired from both cars. The victim was shot in the back and killed by a bullet fired out of one of the cars. The defendant was arrested, a jury trial ensued, several witnesses testified, and he was convicted as an accessory to manslaughter in the first degree in violation of §§ 53a-55 and 53a-8 (a). This appeal followed.

I

The defendant first claims that the state failed to present sufficient evidence to prove beyond a reasonable doubt that he was an active and willing participant in causing the death of the victim. Specifically, he claims that the state failed to sustain its burden of proof on the issue of intent. We disagree.

The following facts are relevant to the defendant's claim. At trial, three witnesses testified about the events that occurred on the day of the victim's death. On the day that the victim was shot, a neighbor, Ivanez Virvet, was watching the Crnkovic brothers play basketball. She testified that David Morales was driving a gray car and that a "dark skinned" man, whom she did not recognize, was a passenger. She also testified that Heriberto Lopez, who also is known as Puto, was the passenger in a brown car. The witness further testified that "[t]he gray car drove by and they started bussing [shooting]. They bussed once I think. . . . And then the brown car just took out a handgun and started shooting, too. And I think that's the one that got . . . [the victim]. And the one that was shooting was Puto, Heriberto Lopez."

Another witness, Alejandro Ramos, who lived in a house on the corner of Davenport Avenue and Kossuth Street, testified that he was on the porch of his house

when he noticed Morales driving a gray Mazda automobile along Davenport Avenue that turned into Kossuth Street. Originally, the witness stated that when he saw the gray car from his porch, he could not identify any of the four people in it other than Morales. He further testified that he did not notice a brown car in the area.

Ramos then testified that about one-half hour later, while he was still on his porch, he heard four gunshots coming from the corner of Davenport Avenue and Winthrop Street near where the Crnkovic brothers were playing basketball. He then testified that he saw the Crnkovic brothers running toward him, at which time he left his porch and ran toward them. He further testified that by the time he reached the brothers, the victim "was already on the floor."

Later that evening, at approximately 8 p.m., Ramos gave a statement to Detective James Ponteau, in which he said that Morales was responsible for shooting the victim.[3] After the witness gave his statement, he testified that Ponteau showed him "a lot" of photographs in his police car. From the photographs that were shown to him, the witness selected those of the gray Mazda automobile, Morales, a person whom he knew by the name "Randy" and whom he believed was in the car, and the defendant, whom the witness testified was in the gray car at the time of the shooting.

The next witness to testify was Paul Crnkovic, the victim's brother. He stated that he had known Morales for a couple of years, and that he and his brother had fought Morales on several occasions. He further testified that Morales was a member of a gang known as the "Liberty Street Posse." The witness stated that he knew Lopez and he knew that Lopez was friendly with Morales. He also testified that he was acquainted with

---

[3] On the morning of May 9, 1991, Ramos gave a second statement to Ponteau, stating that "[he] didn't know who was doing the shooting."

the defendant, whom he identified in the courtroom. He stated that he had known the defendant for approximately two years, and that the defendant was friendly with both Morales and Lopez. He stated that one week before his brother was killed, he had a fight with the defendant and, as they fought, ten to fifteen youths from the "Liberty Street Posse" came running around the corner and jumped on him.

Paul Crnkovic testified that on the day that his brother was shot, he saw Lopez "hanging out" of and shooting from a brown car. He testified further that as Lopez was shooting at him and his brother, he turned around, started to run, heard his brother scream and, when he looked back, saw the defendant also shooting at him. He explained that he and his brother did not run toward the Evergreen Cemetery because the gray car was blocking the way, and "they were shooting at us."

In his testimony, Paul Crnkovic identified Morales as the driver of the gray car, the defendant as the front passenger in the gray car and Lopez as the front passenger in the brown car. When he was asked which car, the brown or the gray car, the lethal shots were fired from, he responded, "I figure the brown car, because, after the second shot out of that car, I heard my brother scream."

## I

The defendant concedes that his claim of insufficiency of the evidence was not properly preserved at trial and now seeks appellate review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[4] "It is well

---

[4] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond

settled that claims of insufficiency of the evidence are reviewable under *Golding* because any defendant found guilty on the basis of insufficient evidence has been deprived of his constitutional rights not to be convicted except on evidence that convinces the jury beyond a reasonable doubt of the existence of every element of the offenses at issue." *State* v. *Toro*, 62 Conn. App. 635, 638–39, 772 A.2d 648, cert. denied, 256 Conn. 923, 774 A.2d 141 (2001). Because the defendant's claim involves a challenge to the sufficiency of the evidence, we review his claim.

"The standards by which we review claims of insufficient evidence are well established. When reviewing a sufficiency of the evidence claim, our courts apply a two-prong[ed] test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"It is within the province of the jury to draw reasonable and logical inferences from the facts proven. . . . The jury may draw reasonable inferences based on other inferences drawn from the evidence presented. . . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable. . . . We note that the probative force of the evidence is not diminished because it consists, in whole or in part, of circumstantial evidence rather than direct evidence. . . . It has been repeatedly stated that there is no legal distinction between direct and circumstantial evidence

a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

so far as probative force is concerned. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . [T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . In doing so, we keep in mind that [w]e have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility. . . .

"Moreover, [i]n evaluating evidence that could yield contrary inferences, the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . As we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [jury], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty. . . . Furthermore, [t]his court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . .

"It is also the absolute right and responsibility of the jury to weigh conflicting evidence and to determine the credibility of the witnesses. . . . Thus, the issue of the identification of the defendant as the perpetrator of the

crime is peculiarly an issue of fact to be resolved by the jury. . . .

"The test for determining whether the evidence is sufficient to sustain a verdict is thus whether the [trier of fact] could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt. . . . *State* v. *Bradley,* 60 Conn. App. 534, 540–41, 760 A.2d 520, cert. denied, 255 Conn. 921, 763 A.2d 1042 (2000)." *State* v. *Toro,* supra, 62 Conn. App. 639–41.

In claiming that the evidence was insufficient, the defendant focuses mainly on the requirement of § 53-8 that to be convicted as an accessory, one must be found to have "intentionally aided another person to engage in conduct which constituted manslaughter in the first degree." The evidence indicated that the occupants of the gray car, with Morales in the driver's seat and the defendant in the passenger seat, and those of the brown car, with Alex Romero in the driver's seat and Lopez in the passenger seat, were acting in concert to prevent the victim and Paul Crnkovic from escaping. See *In re David M.,* 29 Conn. App. 499, 505, 615 A.2d 1082 (1992). Both cars arrived at the location on Davenport Avenue, where the occupants were able to observe the two brothers at approximately the same time, and proceeded slowly along Davenport Avenue, the brown car trailing the gray car at a short distance. Lopez started shooting at the Crnkovics from the brown car with a .38 caliber revolver and fired the bullet that hit the victim.

We conclude that the jury, in determining that the defendant was guilty as an accessory to manslaughter in the first degree, was entitled to rely on Paul Crnkovic's testimony that the defendant was firing at him (Paul) as he was running along Davenport Avenue. That testi-

mony alone is sufficient to justify an inference that the defendant intentionally aided the other members of the Liberty Street gang—Morales, Lopez, Romero and any others at the scene of the crime—in engaging in "conduct which constituted manslaughter in the first degree."

In a jury trial, it is the jury, not the court, that evaluates the testimony and returns the verdict. So long as the verdict is reasonably supported by the evidence, the court cannot reverse it even though the court might prefer a different outcome. We conclude that there was sufficient evidence to support the jury's verdict that the defendant was guilty as an accessory to the crime of manslaughter in the first degree in violation of § 53a-55 (a) and § 53a-8 (a).

II

The defendant next claims that the court improperly instructed the jury regarding consciousness of guilt, although he did not raise any objection to that part of the charge at trial. Despite the lack of any objection at trial, the defendant's claim is reviewable if it satisfies the requirements for a claim of unpreserved constitutional error as set forth in *State* v. *Golding*, supra, 213 Conn. 239–40. See footnote 4.

The court's charge on consciousness of guilt was as follows: "Now, the law of our state recognizes that certain conduct may be considered by you to show consciousness of guilt. When a person is on trial for a criminal offense, it is proper to show his conduct as well as any declarations made by him subsequent to the alleged criminal offense which may have been influenced by that act. The state here claims that some statements made by the defendant to the police were false.

"If you find that the defendant intentionally did make material false statements to the police in connection

with the alleged crime, you may find that such statements tend to show a consciousness of guilt. In other words, from any material statements made by the defendant subsequent to the criminal act alleged, which are shown to be intentionally false, you may fairly infer consciousness of guilt if you find such inference is reasonable.

"Such statements when shown to be false may be circumstantial evidence of consciousness of guilt. If you find that the defendant's acts or words show consciousness of guilt, you may use that inference along with the other facts of the case to determine whether he has been proven guilty of the crimes charged beyond a reasonable doubt."

"Evidence that an accused had made false statements tending to exculpate him from involvement in the crimes charged has commonly been deemed to support a jury charge on consciousness of guilt." *State* v. *Ham*, 55 Conn. App. 281, 291, 739 A.2d 1268, cert. denied, 252 Conn. 916, 743 A.2d 1128 (1999). Such a charge "may be given when a party has made material misstatements because such fabrication or falsification implies that that party believes his or her case to be weak or unfounded." *State* v. *Banks*, 194 Conn. 617, 621, 484 A.2d 444 (1984). The defendant argues, however, that the charge in this case was improper because it effectively lessened the state's burden of proof on the element of intent.

A claim challenging an instruction that mandates a particular inference adverse to a defendant may sufficiently implicate constitutional rights to satisfy the second condition of *Golding*, i.e., that the "claim is of constitutional magnitude alleging the violation of a fundamental right . . . ." *State* v. *Golding*, supra, 213 Conn. 239–40. The language used by the court in this case, however, is plainly permissive and not mandatory.

"The instruction merely identified a permissive inference that the jury might draw from the defendant's false statement, an item of circumstantial evidence." *State* v. *Smith*, 219 Conn. 160, 165, 592 A.2d 382 (1991). The defendant's claim is thus properly viewed as evidentiary rather than constitutional in significance. See id., 166. Because we conclude that the defendant's claim is not of constitutional magnitude, we need not consider whether the remaining requirements of *Golding* have been satisfied. See id. The failure of the defendant to take an exception to the charge precludes further review.

The defendant claims that the court committed an additional error in its instruction on the element of intent. The court charged the jury on intent as follows: "Under the law, a person acts intentionally with respect to a result or to conduct when his conscious objective is to cause such result or to engage in such conduct. What a man's intention has been is necessarily very largely a matter of inference. A man may take the [witness] stand and testify directly as to what his intention was. And that testimony you can believe or not, according to whether it warrants belief. . . . The only way in which a jury can determine what a person's intention was at any given time, aside from the man's own testimony, is by determining what that person's conduct was and what the circumstances were surrounding that conduct, and from those infer what his intention was."

The defendant claims that this portion of the charge unduly emphasized the absence of his testimony during trial and amounts to an improper comment on his failure to testify. Prior to that portion of the charge, however, the court had instructed the jury that "[i]n this case, the defendant has elected not to testify in person. This fact does not create any presumption against him or permit you to draw any inference unfavorable to him for this reason. You are instructed that you must not

permit the defendant's election not to testify in person to weigh against him or enter into your decision in any way whatsoever."

We are not persuaded that the phrases, "[a] man may take the [witness] stand and testify directly as to what his intention was" and "aside from the man's own testimony," even remotely amount to a comment on the defendant's election not to testify, especially in view of the court's earlier instruction that no negative inference should be drawn against the defendant on the basis of his election not to testify. We conclude that the charge was not improper when considered in its entirety, read as a whole and judged by its total effect rather than its individual component parts. See *State* v. *Valinski*, 254 Conn. 107, 119–20, 756 A.2d 1250 (2000).

### III

Finally, the defendant claims that the court improperly charged the jury regarding reasonable doubt. Specifically, he claims that the charge improperly (1) diluted the state's burden of proof by using language analogous to, but even stronger than, the "two inference charge,"[5] which misled jurors into believing that he had some burden to convince them of a "reasonable theory consonant with innocence," (2) included "ingenuity of counsel language" and (3) included language that a reasonable doubt is "such a doubt as in serious affairs which concern yourselves you would heed, that is, such a doubt as would cause reasonable men and women to hesitate to act on it in matters of importance." We disagree.

The defendant again concedes that he did not raise these claims before the trial court by excepting to the

[5] In *State* v. *Lemoine*, 256 Conn. 193, 205 n.13, 770 A.2d 491 (2001), our Supreme Court explained that a "two-inference instruction provides that, if two conclusions reasonably can be drawn from the evidence, one of guilt and one of innocence, the jury must adopt the conclusion of innocence." (Internal quotation marks omitted.)

charge and argues that he is entitled to review under *State* v. *Golding*, supra, 213 Conn. 239–40.[6] The defendant does not meet the third prong of the *Golding* test and, thus, his claims must fail.

"Under prong three of *Golding*, a challenged jury instruction constitutes a clear constitutional violation that clearly deprives a defendant of a fair trial if it is found reasonably possible that the jury was misled by the court's instruction." *State* v. *Tate*, 59 Conn. App. 282, 286, 755 A.2d 984, cert. denied, 254 Conn. 935, 761 A.2d 757 (2000).

A

In his appellate brief, the defendant relies on *State* v. *Griffin*, 253 Conn. 195, 749 A.2d 1192 (2000), in which our Supreme Court approved a similar charge by a trial court and upheld that court's judgment, but nevertheless instructed that "in the future, our trial courts [should] refrain from using the 'two-inference' language so as to avoid any such possible misunderstanding." Id., 210. In the present case, the court rendered judgment on May 6, 1994, and its decision preceded *Griffin* by six years. Our Supreme Court's instruction that the "two inference" charge be abandoned, therefore, cannot be applied to this case. We conclude that the charge given did not deprive the defendant of a fair trial.

B

The defendant also challenges the portion of the charge instructing the jury that a reasonable doubt "is not a doubt suggested by the ingenuity of counsel, which is not warranted by the evidence," and relies on *State* v. *Taylor*, 239 Conn. 481, 504–505, 687 A.2d 489 (1996), cert. denied, 521 U.S. 1121, 117 S. Ct. 2515, 138 L. Ed. 2d 1017 (1997). In *Taylor*, the court commented

---

[6] See footnote 4.

that the phrase "ingenuity of counsel," taken in isolation, conceivably could misdirect the jury's attention and urged trial courts to avoid its further use. The court, nevertheless, affirmed the judgment on the ground that it had previously approved similar language and that these phrases did not, "when properly considered in the broader context of the trial court's instructions in their entirety, [dilute] the state's burden of proof or otherwise misle[ad] the jury in any way." (Internal quotation marks omitted.) Id. That decision was released on December 31, 1996, approximately two years after the judgment in this case and, accordingly, cannot be applied to this case. We conclude, therefore, that the charge given in this case did not deprive the defendant of a fair trial.

C

The defendant finally challenges the portion of the charge in which the court instructed the jury that a reasonable doubt "is such a doubt as in serious affairs which concern yourselves you would heed, that is, such a doubt as would cause reasonable men and women to hesitate to act on it in matters of importance." In *State* v. *Griffin*, supra, 253 Conn. 195, our Supreme Court upheld the constitutionality of "an explanation that a reasonable doubt is a doubt that would cause a reasonably prudent person to hesitate to act in matters of importance." (Internal quotation marks omitted.) Id., 207. In this case, the challenged jury instruction did not constitute a clear constitutional violation depriving the defendant of a fair trial because it is not reasonably possible that the jury was misled by the court's instruction. Because the jury charge did not deprive the defendant of a fair trial, we conclude that his claims fail to meet the third requirement of *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.