## STATE OF CONNECTICUT *v.* ERIC HENRY
### (AC 25252)

DiPentima, McLachlan and McDonald, Js.

---

Argued January 6—officially released August 16, 2005

*Timothy J. Sugrue*, senior assistant state's attorney, with whom were *John M. Massameno*, senior assistant state's attorney, and, on the brief, *Christopher L. Morano*, chief state's attorney, for the appellant (state).

*John Holdridge*, assistant public defender, with whom were *Mark Rademacher*, assistant public defender, and, on the brief, *Michael K. Courtney* and *Barry A. Butler*, senior assistant public defenders, for the appellee (defendant).

*Opinion*

MCDONALD, J. The state appeals from the judgment of the trial court dismissing charges against the defendant, Eric Henry. The state claims that the court improperly denied permission to appeal from the dismissal following a probable cause hearing in which the court improperly determined that the state had failed to establish probable cause to support counts of the information charging the defendant with capital felony, intentional murder and felony murder.

I

The defendant argues that this court should not hear this appeal because the state was denied permission by the trial court to file an appeal. The state claims that the court abused its discretion in so doing and that we should consider this appeal. We agree with the state.

The following facts are relevant to the resolution of this issue. The defendant was arrested on November 8, 1996, and charged with tampering with physical evi-

dence, possession of a handgun without a permit, criminal possession of a firearm and possession of a stolen firearm. On November 14, 1996, the defendant was arrested again and charged with being an accessory to murder, felony murder, burglary in the first degree and conspiracy to commit burglary in the first degree. All charges arose out of the September 25, 1996 homicides of Nicholas Votino, his daughter, Joanne Votino, and Lynn Suszynski and Wayne Barrows.

On December 11, 1996, the state filed a substitute information charging the defendant with four counts of felony murder, four counts of murder and one count of burglary in the first degree. At this time, the defendant waived his right to a probable cause hearing as to the counts of murder and felony murder. On July 15, 1999, the state filed a second substitute information, charging the defendant with four counts each of murder and felony murder, one count each of capital felony, conspiracy to commit multiple crimes, tampering with evidence, hindering prosecution, criminal possession of a firearm and larceny in the first degree, and with commission of a class A felony with a firearm and with being a persistent felony offender. A probable cause hearing followed. At the conclusion of the probable cause hearing on October 5, 2000, the court, among other findings, found that the state had failed to establish probable cause that the defendant had committed the crimes of capital felony, intentional murder as to Nicholas Votino, Barrows and Suszynski, and felony murder as to all the victims.

On November 13, 2000, the state filed a motion to dismiss the counts of the information with respect to which the court had found no probable cause and simultaneously sought permission to appeal from the court's ruling. The court granted the motion to dismiss those counts and, after indicating that it would grant permission to appeal, declined to rule on that motion until

after it filed an articulation. The court, the same day, stayed the dismissal order until after the articulation.

On June 15, 2001, the court filed the articulation of its ruling. On June 29, 2001, the state filed a motion to vacate the dismissal of charges and to open the probable cause hearing to present additional evidence discovered during its preparation for the trial of Michael Camacho, another defendant charged with the homicides. On March 19, 2002, after extended argument, the court granted the state's motion to vacate the dismissal of the charges and granted permission to open the first probable cause hearing. At the new hearing on April 3, 2002, the court found probable cause as to the intentional murders of Nicholas Votino and Suszynski, and as to the count of capital felony, except as to Barrows. The court did not disturb its finding of no probable cause on the counts of capital felony as to Barrows, the intentional murder of Barrows and the four counts of felony murder.

On September 10, 2002, the state filed a motion to reargue the April 3, 2002 findings of no probable cause with respect to the charges of intentional murder and felony murder. The state argued that it should be allowed to reargue the findings of no probable cause because at the trial of Camacho, the court denied motions for a judgment of acquittal as to those charges. On March 31, 2003, the court denied the state's request to reargue the second probable cause hearing. The court found the request to be untimely in that the state, aware of those rulings in November and December, 2001, never made the argument on April 3, 2002.

On April 9, 2003, the state filed a motion to dismiss the counts for which the court failed to find probable cause on October 25, 2000, and April 3, 2002. The state simultaneously filed a motion for permission to appeal from the court's judgment dismissing the pertinent

counts of the information. On August 11, 2003, the court granted the state's motion to dismiss and denied the state's motion for permission to appeal. The court denied the state's motion for permission to appeal on the ground that the request was untimely.

"As a general proposition General Statutes § 54-96 authorizes the state to appeal questions of law in a criminal case only if the trial court grants permission to appeal. Section 54-96, however, does not preclude an appeal by the state when the denial was so arbitrary as to constitute an extreme abuse of discretion rendering the denial ineffective. In such cases the statute's condition requiring the court's permission to appeal cannot serve to insulate a trial court from review by this court; rather, the statute as a whole remains operative to allow appeal by the state. . . . Although we accord great deference to the trial court's discretionary rulings on these matters, that does not mean that its decision is shielded from our scrutiny. . . . Section 54-96 does not deprive this court of jurisdiction simply because the trial court gave considered reasons when it denied the state permission to appeal." (Citations omitted; internal quotation marks omitted.) *State* v. *Bergin*, 214 Conn. 657, 660–61, 574 A.2d 164 (1990). "Confidence in our judicial system would be severely eroded if the trial court had the authority to dismiss charges against [a] defendant before trial on an unsound premise, and could then insulate its decision from appellate review." Id., 662–63. "Consequently, [we] will review a trial court's decision denying the state an appeal and will not uphold the denial if the record manifests a clear and extreme abuse of discretion or [if] injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Peeler*, 271 Conn. 338, 409, 857 A.2d 808 (2004).

Our Supreme Court has held that "a trial court has abused its discretion in denying permission to appeal under § 54-96 if the state demonstrates that: (1) the

issues are debatable among jurists of reason; (2) a court could resolve the issues [in a different manner]; or (3) the questions are adequate to deserve encouragement to proceed further." (Internal quotation marks omitted.) *State* v. *James*, 261 Conn. 395, 402, 802 A.2d 820 (2002), quoting *Lozada* v. *Deeds*, 498 U.S. 430, 432, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991).

Our Supreme Court has also held that for the state to avail itself of the right to appeal, it must move for permission to appeal at the time of the judgment; *State* v. *Avcollie*, 174 Conn. 100, 108, 384 A.2d 315 (1977); or with reasonable promptness thereafter, provided it expresses such intention to appeal at the time of the judgment. *State* v. *Ross*, 189 Conn. 42, 46–47, 454 A.2d 266 (1983). We therefore first address the timeliness of the state's request for permission to appeal.

The record reflects that the state had initially requested permission to appeal on November 13, 2000, when the court first dismissed the charges. At that time, the court deferred granting permission to appeal until after the court filed an articulation of its ruling. After the prior dismissal was vacated, the court dismissed the charges on August 11, 2003, and this is the final judgment from which the state, on April 9, 2003, in advance, requested permission to appeal. Practice Book § 61-6 (b)[1] limits appellate jurisdiction over criminal cases to those cases in which an appeal is brought from a final judgment. See *State* v. *Paolella*, 210 Conn. 110, 118–19, 554 A.2d 702 (1989). In a criminal case, the dismissal of the charges is such a final judgment. See *State* v. *Joyner*, 255 Conn. 477, 488, 774 A.2d 927 (2001).

---

[1] Practice Book § 61-6 (b) provides: "The state, with the permission of the presiding judge of the trial court and as provided by law, may appeal from a final judgment. In cases where an appealable judgment has been rendered on fewer than all counts of the information or complaint, the state may appeal from the judgment at the time it is rendered."

We conclude that the request for permission to appeal was not untimely.

Turning to the *Lozada-James* factors, we note that the state claims on appeal that the court improperly applied the standard of a preponderance of the evidence to the finding of probable cause, an issue squarely within these factors. Accordingly, we hold that the court abused its discretion in denying the state permission to appeal.

II

The state claims on appeal that the court improperly determined that no probable cause had been established for the capital felony and intentional murder counts as to Barrows and the robbery-murder and burglary-murder, felony murder counts. The state contends that the court, by requiring proof by a preponderance of the evidence, employed the wrong standard as to the burden of proof at the probable cause hearing. We agree.

In its articulation, the court found facts that "were established by the state by a preponderance of the evidence at the probable cause hearing." The court found that the state "failed to establish by a preponderance of the evidence" that the defendant was an accessory to the murder of Wayne Barrows and the other victims except for Joanne Votino, and that the state "did not prove by a preponderance of the evidence that the defendant entered into a plan with Camacho or conspired with him to kill Nicholas Votino in order to prevent his resistance to the taking of [Nicholas Votino's] Jeep." The court also found that "[w]hile Camacho may have wanted to use (or take) Votino's Jeep that evening, the state failed to prove by a preponderance of the evidence that Camacho killed the victims . . . to avoid resistance to the taking of Votino's Jeep." Furthermore, the court found that "the state failed to prove by a

preponderance of the evidence that the defendant knew what Camacho was going to do with respect to the Jeep or the murders that evening."

In *State* v. *Munoz,* 233 Conn. 106, 659 A.2d 683 (1995), our Supreme Court held that preponderance of the evidence is an improper standard in evaluating the evidence at a probable cause hearing. Id., 135. It stated that "probable cause is not the same as a preponderance of the evidence [and that] proof of probable cause requires less than proof by a preponderance of the evidence." Id. Our Supreme Court has stated that the proper standard is whether the state's evidence would warrant a person of reasonable caution to believe that the accused had committed the crime. *State* v. *Newsome,* 238 Conn. 588, 598, 682 A.2d 972 (1996).

The defendant argues that the probable cause standard does not apply to the court's findings as to historical facts and that the court's findings are not improper. To support this proposition, he cites *Bourjaily* v. *United States,* 483 U.S. 171, 107 S. Ct. 2775, 97 L. Ed. 2d 144 (1987), and *State* v. *James,* 237 Conn. 390, 419, 678 A.2d 1338 (1996). These cases do not apply here. *Bourjaily* concerned a court's findings of fact as to the admissibility of evidence such as a confession at trial, and *State* v. *James,* supra, 390, did not refer to the preponderance of the evidence standard for a probable cause determination. Moreover, the court applied the preponderance of the evidence standard as the state's burden to establish the existence of probable cause. The court articulated that it arrived at its conclusions as to the defendant's intentional participation in the murders and felony murder by applying the preponderance of the evidence standard. We therefore conclude that the findings of no probable cause were improper.

The state, citing *State* v. *James,* supra, 261 Conn. 409, and *State* v. *Hamilton,* 228 Conn. 234, 246, 636 A.2d

760 (1994), argues that we should reverse the dismissals and enter a finding of probable cause, as the question of the existence of probable cause is a legal one, subject to plenary review on appeal. We agree.

In *State* v. *Patterson*, 213 Conn. 708, 570 A.2d 174 (1990), our Supreme Court reversed a finding of no probable cause that resulted in a dismissal of charges. It then proceeded to review the evidence presented by the state in the light most favorable to the state. The court found probable cause, reversed the dismissal of the charges and directed that the case should be allowed to proceed to trial without the necessity of a new probable cause hearing under General Statutes § 54-46a. *State* v. *Patterson*, supra, 717–22.

The defendant argues that *In re Keijam T.*, 221 Conn. 109, 602 A.2d 967 (1992) (discussing review of probable cause hearings for transferring juvenile for adult prosecution), requires us to consider the court's finding without viewing the state's evidence in a most favorable light. The state argues that *State* v. *Newsome*, supra, 238 Conn. 598, is contrary. We need not resolve this issue in this case. Reviewing the court's articulation and April 3, 2002 findings without viewing the state's evidence in a most favorable light, we conclude that probable cause had been established as to the intentional murder of Barrows and the felony murder counts. In this case, we will consider the court's articulation made under the higher standard of proof; see *State* v. *Munoz*, supra, 233 Conn. 135; and the testimony at the opened probable cause hearing from Kathy Fusco, which the court found credible, that the defendant had made admissions to her about his involvement in the crimes.

The court articulated that it found that the defendant, twenty-nine years old with a prior narcotics record, used Camacho, seventeen years old with no such

record, to engage in drug trafficking, that Camacho sold narcotics on credit to Nicholas Votino, that Votino owed Camacho $400, that Votino leased a Jeep, and that Camacho desired that he take the Jeep to New York and sell it for parts, a request to which Votino objected. The court articulated further that on the night of the shootings, Camacho and the defendant drove together to Nicholas Votino's home in the defendant's girlfriend's car. When they left from the girlfriend's residence, the defendant had the murder weapon in his possession "so nothing bad would happen." En route to the scene of the shootings, the defendant gave the murder weapon to Camacho. Later, the defendant told his girlfriend what next occurred. After the defendant entered the home with Camacho, the defendant saw Camacho shoot Nicholas Votino, then Wayne Barrows and then Lynn Suszynski. When Joanne Votino asked what happened from the other room, the defendant told Camacho to "go get her" and "it's a witness" or "she's a witness." Thereupon, Camacho shot Joanne Votino. After the shootings, the defendant drove away in his girlfriend's vehicle while Camacho drove the Jeep. Thereafter, the defendant hid the murder weapon and later asked Camacho when he would receive his share of the proceeds from the dismantling of the Jeep and sale of its parts. The court articulated that, from the evidence, it may be inferred that Camacho's motive for killing the victims was related to being frustrated that Nicholas Votino would not let him use the Jeep and to Suszynski's having blown crack cocaine smoke in Camacho's face.

At the April 3, 2003 opened probable cause hearing, Fusco testified that the defendant told her that he saw Camacho first shoot Barrows. She testified that the defendant then told Camacho, in turn, to shoot Nicholas Votino because he knew Camacho; to shoot Suszynski, who was shot twice, because she could identify Camacho and "to get her again" because she was still moan-

ing; and to shoot Joanne Votino because she could also identify them. Fusco also testified that the defendant told her that he and Camacho went to Nicholas Votino's house that evening to "get the Jeep" and the $400 that Votino owed Camacho for drugs. At the conclusion of that hearing, the court stated that it credited the testimony of Fusco and found probable cause for the crimes of intentional murder of Nicholas Votino and Suszynski, and capital felony as to the Votinos and Suszynski.

As to the court's conclusions that the defendant was not an intentional participant in the murder of Barrows and the felony murders of the four victims, we will apply the standard of whether the facts would warrant a person of reasonable caution to believe that the defendant had committed those crimes rather than the preponderance of the evidence standard. See *State* v. *Newsome*, supra, 238 Conn. 598. The court concluded that the defendant, although present at the crimes, did not intend the killing of Barrows and the other victims or the robbery of the Jeep because he did not know Camacho would do so. The court also concluded that Camacho and the defendant were guests at the Votino residence and did not enter unlawfully or remain there unlawfully, as their permission to remain there was not terminated by Nicholas Votino. The court further concluded that Camacho did not kill the victims to avoid resistance to taking the Jeep. The court's conclusions are contradicted by its April 3, 2002 finding that in addition to commanding the murder of the witness, Joanne Votino, the defendant ordered the murders of the witnesses, Nicholas Votino and Suszynski, at Votino's home. They are also contradicted by the court's inference that Camacho shot the victims because, in part, of frustration borne of Nicholas Votino's refusal to let Camacho use the Jeep, which Camacho "wanted to use (or take) that evening."

We note first that with respect to felony murder, the state need not show that the defendant intended that the victims be killed in the course of and in furtherance of robbery or burglary. *State* v. *Hernandez*, 204 Conn. 377, 386, 528 A.2d 794 (1987); *State* v. *Dupree*, 196 Conn. 655, 663, 495 A.2d 691, cert. denied, 474 U.S. 951, 106 S. Ct. 318, 88 L. Ed. 2d 301 (1985); *State* v. *Castro*, 196 Conn. 421, 429, 493 A.2d 223 (1985); see also *State* v. *Montgomery*, 254 Conn. 694, 734, 759 A.2d 995 (2000). We also note that even if one is lawfully admitted into a premises, the consent of the occupant may be implicitly withdrawn if the entrant terrorizes the occupants. *State* v. *Allen*, 216 Conn. 367, 384, 579 A.2d 1066 (1990); *State* v. *Reyes*, 19 Conn. App. 179, 191–93, 562 A.2d 27 (1989), cert. denied, 213 Conn. 812, 568 A.2d 796 (1990). Further, we note that robbery is defined as larceny committed by the use of force for the purpose of overcoming resistance to the taking of property. General Statutes § 53a-133. "Because 'taking' is not defined in the Penal Code, we consider the ordinary usage of that term. . . . A criminal taking is '[t]he act of seizing an article, with or without removing it, but with an implicit transfer of possession or control.' Black's Law Dictionary (7th Ed. 1999)." (Citations omitted.) *State* v. *Toro*, 62 Conn. App. 635, 642, 772 A.2d 648, cert. denied, 256 Conn. 923, 774 A.2d 141 (2001). Further defining a taking, *Toro* cites Webster's Third New International Dictionary, which defines take as "1: to get into one's hands or into one's possession, power, or control by force . . . as a: to seize or capture physically . . . 6: to transfer into one's own keeping . . . enter into . . . use of . . . ." (Internal quotation marks omitted.) Id.

The killings of the Votinos, Barrows and Suszynski occurred when Nicholas Votino's Jeep was taken. The defendant's commanding of Camacho to kill the witnesses in these circumstances would warrant a person of reasonable caution to believe that the defendant had

the requisite intent for felony murder and the intentional murder of Barrows. The killing of one witness to a crime would support this belief, and the directed killing of three witnesses to a crime is even stronger and unambiguous evidence of consciousness of guilt. It is reasonable to believe that the defendant would not have directed the killings of the witnesses "unless he was also involved" as a participant in those crimes. *State* v. *Mitchell*, 200 Conn. 323, 337, 512 A.2d 140 (1986) (finding sufficient involvement for probable cause where defendant fled with assailants, remained in their company).

We conclude that the court improperly found no probable cause. The court's actions in doing so and dismissing the counts is therefore reversed, and those charges against the defendant may proceed to trial without the necessity of a further hearing under § 54-46a.

The judgment is reversed and the case is remanded for further proceedings in accordance with law.

In this opinion the other judges concurred.